181 P.3d 1231

**STATE of Idaho, Plaintiff–Appellant,**

v.

**David PRUSS, Defendant–Respondent.**

No. 33617.

Supreme Court of Idaho,
Boise, March 2008 Term.

March 27, 2008.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Ralph R. Blount argued.

Molly J. Huskey, State Appellate Public Defender, Boise, for respondent. Sara B. Thomas argued.

EISMANN, Chief Justice.

This is an appeal from an order suppressing evidence obtained from the warrantless search of a "hooch" constructed by the Defendant on public forest lands. We hold that the district court did not err in holding that the Defendant had a reasonable expectation of privacy in his hooch and that the search cannot be justified as incident to his lawful arrest where it occurred after he had been arrested, handcuffed, and removed from the scene.

## I. FACTS AND PROCEDURAL HISTORY

During the summer of 2005, the Clearwater County sheriff's department was investigating a series of burglaries and property damage crimes. The damaged property included logging equipment and public utility facilities that had been shot with a high-powered rifle and a handgun. Sheriff deputies learned from confidential informants that the person responsible was one David Pruss (Pruss), that he was armed with a .357 cali-

ber handgun and a MAK–90 semi-automatic rifle, and that he talked about shooting public utilities facilities in order to draw law enforcement personnel so he could ambush them. *According to the informants, Pruss was living in a "hooch" in the forest.*

Based upon the information obtained during the investigation, the State filed a complaint on July 12, 2005, charging Pruss with felony crimes of malicious injury to property and burglary. On the same date, a warrant was issued for Pruss's arrest, with bond set in the amount of $150,000.

A house near the site of the vandalized logging equipment had been burglarized twice, with coffee being stolen. In an attempt to locate Pruss, a deputy put a transmitter in a coffee can at the home. The can was stolen in another burglary, and on August 30, 2005, a group of eight to ten deputies tracked the signal to a steep, heavily-wooded ravine adjacent to the logging site. There they found a frame structure camouflaged with tree branches that was about six feet square and three to five feet high. The frame was made of sections of limbs or small trees that were lashed together. The frame was covered by a plastic blue tarp, which was then covered by the tree boughs. *A backpacking tent was erected inside the wooden frame, which extended a few feet beyond the front of the tent to form a small vestibule.* For simplicity, the word "hooch" will be used to refer to both the tent and wooden structure.

When they approached the hooch, deputies could hear noise coming from inside it.[1] One deputy ordered the occupant to come out, and when there was no response he fired two rounds of CS gas into the hooch. The deputy moved closer and saw someone partially exposed at the hooch's doorway. He ordered the person to come out and show his hands, and the person began crawling out. As he was doing so, the deputy could see a MAK–90 rifle lying on the tent floor near the person's leg. When the person was about halfway out of the hooch, he paused and appeared about to re-enter it. The deputy

then forced him to the ground and ordered him not to move. When other officers covered the person, the deputy handcuffed him, searched him for weapons, and then had him stand up outside the structure. The person turned out to be Pruss. The deputies immediately escorted Pruss to an all terrain vehicle, which they used to transport him out of the ravine up to a nearby road. He was then put in a patrol car and taken to jail. After deputies had removed Pruss from the scene, other deputies searched the hooch without a warrant.

On March 21, 2006, the State filed an amended criminal complaint charging Pruss with twenty-one felonies and fourteen misdemeanors. After a preliminary hearing, Pruss was bound over to answer to the charges in district court.

On June 6, Pruss moved to suppress the items obtained from the search of the hooch on the ground that the warrantless search and seizure violated the Constitutions of the United States of America and the State of Idaho. The State contended that Pruss did not have a reasonable expectation of privacy in the hooch; that the search was incident to a lawful arrest; that the portability of the hooch removed it from protection of the Fourth Amendment to the United States Constitution and Article 1, § 17, of the Idaho Constitution; and that the MAK–90 rifle and coffee can were lawfully seized because they were in plain view. After an evidentiary hearing, the district court held that the search and seizure violated the Fourth Amendment and ordered all of the items seized suppressed from evidence. The State then timely appealed.

## II. ISSUES ON APPEAL

1. Did Pruss have a reasonable expectation of privacy in his hooch?

2. Were the MAK–90 rifle and the coffee can seized as part of a lawful search incident to Pruss's arrest?

---

1. The noise included the sound of a zipper, which may have been Pruss unzipping the door   of the tent.

## III.  ANALYSIS

Pruss alleged in his motion to suppress that the search of his hooch violated both Article 1, § 17, of the Idaho Constitution and the Fourth Amendment to the Constitution of the United States.  The district court based its decision upon the Fourth Amendment and did not address the Idaho Constitution.  The guarantee against unreasonable search and seizure under Article 1, § 17, is substantially similar to the guarantee under the Fourth Amendment, although this Court has at times construed the provisions of our Constitution to grant greater protection than that afforded under the United States Supreme Court's interpretation of the federal Constitution.  *State v. Fees,* 140 Idaho 81, 88, 90 P.3d 306, 313 (2004).  Because Pruss relied upon the provisions of both Constitutions, our opinion in this case is based upon both the Idaho and federal Constitutions.

■■■ "When we review an order granting or denying a motion to suppress, we accept the trial court's factual findings, unless they are clearly erroneous.  We exercise free review, however, over the trial court's determination of whether or not those facts require suppression of the evidence." *Fees,* 140 Idaho at 84, 90 P.3d at 309 (citations omitted).

### A.  Did Pruss Have a Reasonable Expectation of Privacy in His Hooch?

■■■ A person challenging a search has the burden of showing that he or she had a legitimate expectation of privacy in the item or place searched.  *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633, 641 (1980); *State v. Cowen,* 104 Idaho 649, 651, 662 P.2d 230, 232 (1983).  That involves a two-part inquiry: (1) Did the person have a subjective expectation of privacy in the object of the challenged search? and (2) Is society willing to recognize that expectation as reasonable?  *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811–12, 90 L.Ed.2d 210, 215–16 (1986); *State v. Donato,* 135 Idaho 469, 473, 20 P.3d 5, 9 (2001).

■■■ The first inquiry under the two-part test is an issue of fact.  Did Pruss have a subjective expectation of privacy in his hooch?  The district court found that he did.

That finding is supported by substantial and competent evidence.  Pruss attempted to camouflage his hooch so that it would not be readily observable.  More significantly, one can certainly infer that a person has a subjective expectation of privacy in his dwelling, even if it is a temporary structure like a tent, travel trailer, or the hooch in this case.

The second inquiry is an issue of law.  Is society willing to recognize Pruss's expectation of privacy as being reasonable?  Stated differently, "the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States,* 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214, 227 (1984).

"[N]either history nor this Nation's experience requires us to disregard the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." *Payton v. New York,* 445 U.S. 573, 601, 100 S.Ct. 1371, 1387–88, 63 L.Ed.2d 639, 660 (1980).  The respect for the sanctity of the home does not depend upon whether it is a mansion or hut, or whether it is a permanent or a temporary structure.  As stated eloquently by William Pitt, " 'The poorest man may in his cottage bid defiance to all the forces of the Crown.  It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!' " *Miller v. United States,* 357 U.S. 301, 307, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332, 1337 (1958) (quoting remarks attributed to William Pitt).

■■■ A structure need not be one's "home" in order for the occupant to have a legitimate expectation of privacy there. *Minnesota v. Olson,* 495 U.S. 91, 96, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85, 92–93 (1990).  " '[T]he Fourth Amendment protects people, not places,' and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." *Id.* at 96 n. 5, 110 S.Ct. at 1688 n. 5, 109 L.Ed.2d at 93 n. 5.

Throughout our State's history, its citizens have engaged in various types of outdoor recreational activities on public lands.  Ida-

ho's first game laws were enacted by the Territorial Legislature in 1864. Idaho's state park system will celebrate its centennial this year. While engaging in outdoor recreational activities on public lands, our citizens often use various types of portable shelters such as backpacking tents, wall tents, tent trailers, and travel trailers. The central purpose of the constitutional protection against unreasonable searches and seizures forecloses any distinction between such types of shelters. *See, United States v. Ross,* 456 U.S. 798, 822, 102 S.Ct. 2157, 2171–72, 72 L.Ed.2d 572, 592 (1982) ("a constitutional distinction between 'worthy' and 'unworthy' containers would be improper"). If the travel trailer is protected against government intrusion, then so is the tent.

■ Utilizing public lands for outdoor recreational activities is a longstanding custom in this State that is recognized as valuable to society. For example, on May 1, 2007, the Governor of Idaho issued a proclamation declaring June 2007 to be "Great Outdoors Month" and "invit[ing] citizens to observe this month by taking advantage of the many opportunities our state offers for family outdoor recreation activities." As the Governor recognized in his proclamation, "[O]utdoor activities contribute to the physical well-being and happiness of the people of the state." We hold that a person using a temporary shelter[2] on public lands as his or her living quarters has a reasonable expectation of privacy in that shelter and that the government may not intrude into the shelter without a search warrant, absent an exception to the warrant requirement.

We recognize that such temporary shelters will often be located far from courthouses.[3] In this case, the deputies were in radio contact with the sheriff's office. Idaho law permits telephonic applications for a search warrant and authorizes the magistrate to have a peace officer sign the magistrate's name on the warrant. *State v. Zueger,* 143 Idaho 647, 152 P.3d 8 (2006); *State v. Fees,* 140 Idaho 81, 90 P.3d 306 (2004); I.C. § 19–4406. In addition, many permanent homes in our State are located in remote areas. Remoteness does not justify waiving the warrant requirement.

Relying upon Idaho Code § 58–312,[4] the State argues that Pruss did not have a reasonable expectation of privacy because he was a squatter[5] and trespasser on state land. The applicable part of that statute provides, "All persons using or occupying any state land without a lease from the state ... shall be regarded as trespassers." We need not address the scope of that statute because the deputies in this case were not the owners of the land or in charge of it. There is nothing in the record indicating that the Department of Lands had told Pruss to leave or had asked the deputies to evict him.

2. By "temporary," we mean not permanent. Temporary does not refer to the length of time the person utilizes the temporary shelter as his or her abode.

3. The activity log of radio transmissions maintained by dispatch indicates that it would be about an hour drive from where Pruss was put into the patrol car to the sheriff's office.

4. That statute provides:
    All persons using or occupying any state land without a lease from the state, and all persons who shall use or occupy state lands for more than thirty (30) days after the cancellation or expiration of a lease, shall be regarded as trespassers, and upon conviction shall be fined in a sum of not less than twenty-five dollars ($25.00) nor more than $500, or shall be punished by imprisonment in the county jail for a term of not to exceed six (6) months, or by both such fine and imprisonment. Any criminal suit under this section may be instituted by any person against any trespasser,

and regardless of the fact whether or not the said land is under lease to any person other than the trespasser, and in case of a lessee, the sureties of his bond shall be liable to a civil suit for all damages sustained by the state by reason of the trespass. Any suit for civil damages against a trespasser, may be instituted by the attorney general in the name of the state, or in the event the land trespassed upon is leased, such suit for civil damages may be brought by the lessee in his own name: provided further, it shall be the duty of the prosecuting attorney to commence and prosecute all criminal actions under this section, arising in his county.

5. There was evidence in the record that Pruss had been living in the woods for slightly over two months, although no finding was made or requested as to whether he had been living in the same place during that time. The parties assumed that Pruss's hooch was located on State land.

The State next contends that the place where Pruss had established his camp was not a designated campground. That has no relevance to whether his expectation of privacy was reasonable. The longstanding tradition of camping on public lands in Idaho is not limited to camping at designated campgrounds. Many backpackers, fishermen, hunters and others seek isolated areas far from designated campgrounds to engage in their activities.

■ The State also asserts that Pruss should not have a reasonable expectation of privacy in his hooch because he was not engaged in ordinary outdoor recreation. Rather, he was using his hooch as a base from which to commit the crimes of burglary and malicious injury to property and he was a danger to others. In addition, the State adds that Pruss wrongfully cut tree branches to construct his hooch and left trash around his campsite. The protections of the Fourth Amendment and Article 1, § 17, extend even to those who are engaged in illegal activities. Virtually all of the judicial decisions interpreting and applying those constitutional provisions arise out of criminal cases in which a search or seizure produced evidence showing that the person claiming the protection of the Constitution had committed a crime. Any holding that the protection against a warrantless search depends upon whether it produced evidence of criminal activity would diminish the rights of law-abiding citizens.

The State noted several times in its brief and argument that Pruss was armed with a rifle and handgun, apparently asserting that persons with firearms do not have a reasonable expectation of privacy on public lands. Many people utilizing public lands in Idaho carry firearms for hunting, protection, or simply recreational shooting. When doing so, they do not lose their rights under the Fourth Amendment and Article 1, § 17.

■ Finally, the State contends that Pruss did not have a reasonable expectation of privacy because the place where he was camping was subject to the "open fields doctrine" stated in Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In Oliver, the Supreme Court held that the government's intrusion upon an open field located outside the curtilage of the home did not violate the Fourth Amendment, even if the field was posted with "No Trespassing" signs. The State argues, "Because the forest land upon which Pruss pitched a tent and covered with branches was accessible to the public, and the police, it was subject to the open fields doctrine. Pruss had no expectation of privacy in his activity on that land." Although the State is correct that Pruss did not have a reasonable expectation of privacy in the forest land surrounding his campsite, the interior of Pruss's hooch was not an open field. Police officers acting without a warrant are entitled to the same intrusion as a reasonably respectful citizen. State v. Christensen, 131 Idaho 143, 147, 953 P.2d 583, 587 (1998). A reasonably respectful citizen would not make an uninvited entry into another's tent pitched on public lands. Although the police could certainly have walked up to Pruss's hooch and while doing so could have lawfully observed anything in plain view, the open fields doctrine would not justify their entry into the hooch.

**B. Were the MAK–90 Rifle and the Coffee Can Seized as Part of a Lawful Search Incident to Pruss's Arrest?**

During the search of Pruss's tent, the deputies seized his MAK–90 rifle and the stolen coffee can in which the transmitter had been placed. The State argues that those items should at least be admissible in evidence. Because Pruss had a reasonable expectation of privacy in his hooch, the State has the burden of showing an exception to the warrant requirement. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); State v. Curl, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). The State argues two exceptions.

■ First, the State contends that the search of Pruss's hooch can be justified as a search incident to his arrest. When making a lawful custodial arrest, law enforcement personnel are entitled to search an arrestee and the area immediately surrounding him. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Watts,

142 Idaho 230, 127 P.3d 133 (2005). "This rule was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence." *Thornton v. United States*, 541 U.S. 615, 620, 124 S.Ct. 2127, 2130, 158 L.Ed.2d 905, 912 (2004); *accord, State v. LaMay*, 140 Idaho 835, 838, 103 P.3d 448, 451 (2004).

In this case, the district court found that Pruss was arrested at about 7:16 a.m.;[6] that he was immediately transported by all-terrain vehicle out of the ravine to a road, which took twenty to twenty-five minutes; that by about 8:12 a.m. he was being transported in a patrol car to the sheriff's office; and that the search began at about 9:00 a.m.[7]

"[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978) (quoting from *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882–83, 20 L.Ed.2d 889, 908–09 (1968)). The search in this case began about forty-five minutes after Pruss had been driven away in the patrol car. At that time, there was absolutely no danger that Pruss could have used any weapon in the hooch or could have destroyed any evidence of a crime. The district court did not err in holding that the intrusion into Pruss's hooch could not be justified as a search incident to his arrest. *Chambers v. Maroney*, 399 U.S. 42, 47, 90 S.Ct. 1975, 1978, 26 L.Ed.2d 419, 426 (1975) ("the reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house"); *La-*

*May*, 140 Idaho at 839, 103 P.3d at 452 (where defendant had been arrested, handcuffed, and placed in a hallway under guard, the search of a backpack located fifteen feet away in another room was not justified as a search incident to his arrest merely because the backpack had been in his immediate control prior to his arrest).

The State argues that the MAK-90 rifle and the coffee can were plainly visible when Pruss was crawling out of his hooch. "The plain view exception allows police officers to make warrantless seizures of evidence viewed from a location where the officer has a right to be. Thus, the plain view exception applies to warrantless seizures of readily visible items, not warrantless searches." *State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998); *accord, Horton v. California*, 496 U.S. 128, 134–36, 110 S.Ct. 2301, 2306–08, 110 L.Ed.2d 112, 121–23 (1990). "[A]pplication of the plain view exception also requires that officer have 'a lawful right of access to the object itself.'" *State v. Buti*, 131 Idaho 793, 799, 964 P.2d 660, 666 (1998) (quoting from *Horton* at 137, 110 S.Ct. at 2308, 110 L.Ed.2d at 123). The deputies did not enter Pruss's hooch prior to the warrantless search. Their observation of the items from outside the hooch was lawful and could have been information submitted to obtain a search warrant, but it does not justify the warrantless intrusion into the hooch in order to search it.

Second, the State contends that concern about the possibility of booby-traps was a valid reason for not immediately searching the hooch incident to Pruss's arrest. The confidential informants had stated that Pruss was fascinated with and knowledgeable about bombs and booby-traps, and the information that the deputies had learned about him cer-

---

**6.** The time stated for the arrest may be a typographical error. The testimony was that the arrest occurred at about 7:36 a.m., which would be consistent with the immediate transport to the waiting patrol car taking twenty to twenty-five minutes and the car being en route to the sheriff's office at 8:12 a.m. The difference between 7:16 a.m. and 7:36 a.m. is not of constitutional significance in this case. The times of the arrest and transport were based upon entries in dispatch activity log recording radio transmissions from the deputies.

**7.** The district court found that the search occurred about an hour after Pruss's arrest. During oral argument, the State contended that the search began fifteen minutes after Pruss's arrest and that the trial court's findings to the contrary were clearly erroneous. Because the State did not raise that issue in its opening brief, we will not consider it on appeal. *Hogg v. Wolske*, 142 Idaho 549, 557–58, 130 P.3d 1087, 1095–96 (2006); *Rowley v. Fuhrman*, 133 Idaho 105, 108, 982 P.2d 940, 943 (1999); *State v. Lewis*, 126 Idaho 77, 82, 878 P.2d 776, 781 n. 2 (1994).

tainly justified caution. The deputies did not need a warrant to search the area around Pruss's hooch for any possible booby-traps. However, the State has not pointed to anything in the record indicating that they were concerned enough to do so. It likewise has not pointed to any evidence indicating that the deputies believed the interior of Pruss's hooch may have been booby-trapped or that it contained explosives. The State did not raise this argument in the trial court and has not shown that it justifies the warrantless search in this case. A more likely reason for the delay, based upon the testimony presented, is that the deputies desired to make a methodical search of the hooch and its contents, photographing and recording the various items found.

## IV. CONCLUSION

The order of the district court suppressing the items seized during the search of Pruss's hooch is affirmed.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem WALTERS concur.