**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45891**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 14, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| TERRI LEE SIMMONS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy Baskin, District Judge.

Judgment of conviction for felony possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Terri Lee Simmons appeals from the judgment of conviction entered upon her conditional guilty plea to possession of methamphetamine. On appeal, Simmons argues the district court erred in denying her motion to suppress. Because there was sufficient evidence to justify the search of the containers in this case, we affirm the district court's denial of Simmons' motion to suppress and judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The district court issued factual findings in this case, which we adopt on appeal.[1]

_____

[1]    In her opening brief on appeal, Simmons does not challenge that there was substantial and competent evidence to support the district court's factual findings in this case. Simmons asserts in her reply brief that pursuant to *State v. Andersen*, 164 Idaho 309, 429 P.3d 850 (2018), this Court may freely review the evidence in this case rather than give deference to the district

1

After receiving a call from dispatch, a police officer visited a carwash to investigate a suspicious individual. When the officer arrived, a carwash employee explained that an older woman had been sitting in the alley behind the carwash. According to the employee, the woman departed from the area and left items next to a dumpster, including a box with a picture of a gun printed on it and some baggies containing an unknown substance.

Next to the dumpster, the officer discovered a cat inside a pet carrier, a Tupperware container, a few small black boxes, some paperback books, and a brown box with a picture of a gun printed on it. The officer opened the brown box with the picture of a gun and found multiple syringes and a plastic spoon with a white substance on it. In the Tupperware container, the officer found several items including a pipe with a brown substance on it.

As the officer was placing the items on the ground near the dumpster, Simmons approached. The officer directed Simmons: "stop, stop right there. Put your stuff down." Simmons explained to the officer that a carwash employee gave her permission to leave her cat in the alley near the dumpster. The officer directed Simmons to sit down and explained to her that a carwash employee called the police because there was property left behind the dumpster. Simmons said: "Yeah it's my stuff, my cat." The officer explained he found a box with a picture of a gun on it which contained "a bunch of needles and stuff." Simmons replied: "What do you mean? I don't have a gun." Simmons later stated: "That's not even a gun, it's a B.B. gun."

The officer informed Simmons that she was being detained because he had reason to believe the items in the alley included drug paraphernalia. At that point, Simmons stated that only the cat belonged to her and she denied that she owned the box with the picture of a gun. A carwash employee entered the alley and told the officer that Simmons had permission to store property there. However, the carwash employee noted there was some concern about what was in the alley besides the cat. The officer asked if the concern was due to the box with a picture of a gun on it, to which the employee responded: "Yes." Simmons interjected: "it's a B.B. gun."

---

court's factual findings. Because Simmons fails to challenge the district court's factual findings in her opening appellate brief, we decline to revisit these findings. *See* I.A.R. 35(a)(6) and *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 525, 272 P.3d 491, 497 (2012).

Several minutes later, the officer informed Simmons of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  The officer provided Simmons with the following explanation:

> I see that box has a picture of a gun on it, and right now it's abandoned property.  I'm not going to leave that for some kid, so I'm going to make sure there's not a gun in there.  Open it up, and there was a bunch of syringes.  Some of them look used, so it's drug paraphernalia, that's why you're detained right now.  When you came here, you said you asked for permission to store your stuff here.

Simmons was not arrested that day.  Nearly a month later, the State filed a criminal complaint and a warrant was issued for the arrest of Simmons.  The State charged Simmons with felony possession of methamphetamine, Idaho Code § 37-2732(c), misdemeanor possession of marijuana, I.C. § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A.  Simmons filed a motion to suppress the physical evidence obtained and later filed an amended motion to suppress the statements made by Simmons to the officer.  The district court issued a memorandum decision and order denying Simmons' motion to suppress the physical evidence obtained as well as any statements made to the officer.

Simmons entered a conditional guilty plea to the charge of methamphetamine possession, and in exchange, the State dismissed the remaining charges.  As part of the agreement, Simmons reserved the right to appeal the denial of her suppression motion.  The district court imposed a unified sentence of five years, with two years determinate.  The district court suspended the sentence for a five-year term of probation.  Simmons timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated.  When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

## III.

## ANALYSIS

Simmons argues the district court erred in denying her motion to suppress since her containers were protected by the Fourth Amendment. Simmons contends the officer's warrantless search of the containers was a violation of the Fourth Amendment because Simmons did not abandon the property and did not disclaim ownership of one of the containers until after the officer conducted a search.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

A person challenging a search has the burden of showing that he or she had a legitimate expectation of privacy in the item or place searched. *State v. Pruss*, 145 Idaho 623, 626, 181 P.3d 1231, 1234 (2008). That involves a two-part inquiry: Did the person have a subjective expectation of privacy in the object of the challenged search? Is society willing to recognize that expectation as reasonable? *Id.* The first inquiry is a question of fact; the second is a question of law. *Id.* Here, Simmons expressed her subjective expectation of privacy, therein satisfying the first part of the inquiry. The only issue on appeal is, therefore, whether Simmons' expectation of privacy was reasonable.

Simmons argues her containers were protected by the Fourth Amendment and they were not divested of protection simply because they were in the open. Simmons contends that her homelessness required her to keep property in open areas where she did not have a tent or other shelter. Despite her claim, Simmons' expectation of privacy was not reasonable, and thus, Simmons did not have a legitimate expectation of privacy in the containers the officer searched. When considering whether an expectation of privacy was reasonable, this Court has considered the following factors: ownership, possession, control, ability to regulate access to the evidence, historical use of the item seized, and the totality of the surrounding circumstances. *State v. Johnson*, 126 Idaho 859, 862, 893 P.2d 806, 809 (Ct. App. 1995). Here, Simmons left a pile of belongings in an alleyway next to a dumpster. The dumpster was located behind a carwash, but

still in open view of the public. When the officer arrived and conducted a search, Simmons was not present, and thus, was not exhibiting ownership of her belongings. Simmons was not in possession of the containers, could not control the belongings, and had no ability to regulate access by the public. It is not reasonable to expect privacy in items left in open view of the public next to a dumpster since society generally considers such items to be garbage that either cannot fit in the dumpster or are impliedly offered for the public to take. The historical use of the items seized--in this case, containers next to a dumpster--also does not favor Simmons. Society's general view about items left next to a dumpster does not distinguish between items that are neatly stacked or simply piled next to a garbage receptacle, as Simmons suggests. Our analysis does not change depending on whether an individual received permission to place his or her belongings in a public location.

While we agree with the general proposition that containers may be protected by the Fourth Amendment, it is unreasonable to expect privacy in containers that are left unattended next to a public dumpster. Simmons relies on *Katz v. United States*, 389 U.S. 347 (1967) for the proposition that the containers did not lose Fourth Amendment protection even though they were in the open. *Katz*, however, stands for more than that proposition. *Katz* involved FBI agents who attached an electronic listening and recording device to a public phone booth. *Id.* at 348. Before the Court determined the defendant had Fourth Amendment protection for a phone call placed in a public telephone booth, the Court stated: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 351 (internal citations omitted). A private telephone conversation in a public phone booth is not analogous to a stack of boxes left unattended next to a public dumpster. However, insofar as *Katz* applies to this case, it does not favor Simmons. Simmons did not seek to preserve the privacy of her belongings, as is required by *Katz*. She did not cover her belongings or place them behind the dumpster so they were hidden and out of view of the public. She also did not remain with the containers so that she could prevent or discourage someone from opening or accessing them or otherwise label the items as private property. Rather, the evidence indicates that Simmons left her unattended belongings exposed to the public. It is unreasonable to expect society to recognize a protected interest in these circumstances.

Simmons' status of homelessness does not alter our analysis with regard to privacy. Not only did Simmons knowingly expose her belongings to the public, she also left her property unprotected and unaccounted for. If an individual places his or her property next to a dumpster and then leaves the area, it is unreasonable to expect privacy in the belongings, regardless of the person's housing status.

Whether Simmons had a reasonable expectation of privacy is determinative in this case. We need not decide the extent to which Simmons abandoned the property when she left it next to a dumpster. Because Simmons did not have a reasonable expectation of privacy in the belongings left next to the dumpster, the district court did not err when it denied Simmons' motion to suppress.

## IV.
## CONCLUSION

Because there was sufficient evidence to justify the search of the containers in this case, we affirm the district court's denial of Simmons' motion to suppress and judgment of conviction.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.