# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46451

STATE OF IDAHO,                      )

                                      )

      Plaintiff/Respondent,        )       **Boise, November 2020 Term**

                                        )

v.                                 )       *Amended* **Opinion Filed: March 23, 2021**

                                        )

JESSE DAVID REBO           )       **Melanie Gagnepain, Clerk**

                                        )

      Defendant/Appellant.         )

_____ )

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Scott Wayman, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, attorney for Appellant. Jason Pintler argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Justin Porter argued.

_____

BEVAN, Chief Justice

    This is a case about the extent of a person's privacy and property rights in a residence from which he had been ordered to stay away. Jesse David Rebo shared a home with his wife in Coeur d'Alene for ten years. Due to a domestic assault conviction, Rebo had been ordered by a judge to not go within 300 feet of his wife or the family residence. Even so, about a week after the court issued the order, Rebo was seen near his wife, outside the home, by a police officer. The officer announced herself and Rebo retreated inside. The officer entered the home and arrested Rebo. Methamphetamine was ultimately found on Rebo's person when he was booked at the jail.

    Rebo brought a motion to suppress that evidence, which the district court denied. The court ruled that Rebo lacked standing to challenge the officer's warrantless entry into his

1

residence because society would not recognize Rebo's subjective expectation of privacy in the residence from which a valid no contact order prohibited Rebo from entering. Rebo appeals, arguing that his ownership interest in the home allowed him to exclude others, including the officer from the home. Rebo also argues no exigent circumstances existed to justify the officer's warrantless entry and the evidence discovered after the officer's unlawful entry should have been suppressed as "fruit of the poisonous tree." We affirm the district court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2017, Rebo was arrested for a domestic assault against his wife, a misdemeanor under Idaho Code section 18-918(3)(a). The following day, Rebo appeared before the magistrate and pleaded guilty. The court then issued a no contact order against Rebo that listed his wife as the protected person. The no contact order provided:

> THE COURT . . . <u>ORDERS THE DEFENDANT TO HAVE NO DIRECT OR INDIRECT CONTACT WITH THE PROTECTED PERSON(S), unless through an attorney</u>. You may not harass, follow, contact, attempt to contact, communicate with (in any form or by any means including another person), *or knowingly go or remain within <u>300</u> feet of the protected person's person, property, residence*, workplace or school. . . .

(Italics added; capitalization and underlining in original). The no contact order also explained: "<u>IF THIS ORDER REQUIRES YOU TO LEAVE A RESIDENCE SHARED WITH THE PROTECTED PERSON(S)</u>, you must contact an appropriate law enforcement agency for an officer to accompany you while you remove any <u>necessary</u> personal belongings[.]" Rebo acknowledged he understood the terms of the no contact order and informed the court that he had acquired a separate residence.

About a week later, on February 14, 2017, Officer Emily Taylor with the Coeur d'Alene Police Department was completing a routine patrol when she decided to go check out the Rebo residence. Once there, she observed Rebo standing in the back of his truck that was parked behind the residence Rebo had shared with his wife. Officer Taylor, who was familiar with Rebo and his wife from the domestic assault incident, also observed Rebo's wife at the residence. Officer Taylor confirmed the no contact order was still in effect and then requested assistance from other units.

Officer Taylor initiated contact with Rebo by flashing her flashlight and stating "police." Rebo then ran into his residence. Officer Taylor pursued Rebo. Officer Taylor knocked on Rebo's front door when the door opened slightly and Officer Taylor announced herself before

entering. Officer Taylor found Rebo inside and arrested him for violating the no contact order. Officer Taylor transported Rebo to the Kootenai County jail. During a search of Rebo performed at the jail, methamphetamine was found on his person.

Rebo was charged with possession of a controlled substance (methamphetamine), a felony under Idaho Code section 37-2732(c)(1), possession of major contraband within a correctional facility, a felony under Idaho Code section 18-2510(3), violation of the no contact order, a misdemeanor under Idaho Code section 18-920, and obstructing an officer, a misdemeanor in violation of Idaho Code section 18-705. Rebo moved the district court to suppress the methamphetamine, arguing Officer Taylor's warrantless entry into his residence violated the Fourth Amendment. At the hearing on the motion to suppress, the district court expressed its concern about whether Rebo had standing to challenge the warrantless entry based on the existence of the no contact order. As a result, the district court continued the hearing to give the parties an opportunity to present more evidence and briefing on that issue. The hearing on the motion to suppress resumed after some delay.

In its ruling, the district court first addressed the propriety of Officer Taylor's warrantless entry into Rebo's home. The court found no exigent circumstances justified the officer's warrantless entry into Rebo's residence. Even so, the district court ultimately denied Rebo's motion to suppress–finding that Rebo lacked standing to pursue the motion. The district court explained:

> A court order had been entered prohibiting [Rebo] from being at the residence occupied by his wife. She was there; he was there. The circumstances indicate that he was aware of the issuance of the no contact order that covered her residence.
>
> In this case, Mr. Rebo fled into the house to escape the police officers. The police officers were there to enforce the very order prohibiting him from having contact with Ms. Rebo and going within 300 feet of her residence. I don't find that Mr. Rebo had an objective reasonable expectation of privacy in the house occupied by Ms. Rebo after that no contact order had been issued, and he had notice of that order. So I don't find that he has carried his burden to prove the existence of a legitimate expectation of privacy in the house where he was arrested and doesn't have standing to complain about the warrantless entry by the police officers.

After the district court denied his motion to suppress, Rebo entered a conditional guilty plea to possession of a controlled substance, as well as to violation of the no contact order and obstructing a police officer. The district court dismissed the major contraband charge. The

3

district court entered judgment against Rebo for felony possession of a controlled substance on May 25, 2018. Rebo timely appealed.

## III. ISSUE ON APPEAL

Whether the district court's denial of Rebo's motion to suppress was erroneous?

## IV. STANDARD OF REVIEW

"When this Court reviews a district court's order granting or denying a motion to suppress, the 'standard of review is bifurcated.' " *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)). This Court defers to the trial court's factual findings unless clearly erroneous. *State v. Samuel*, 165 Idaho 746, 755, 452 P.3d 768, 777 (2019). "[F]ree review is exercised over a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *Id.*

## V. ANALYSIS

Even though the district court found that Officer Taylor violated the Fourth Amendment by entering Rebo's residence without a warrant, the court found Rebo lacked standing to challenge that violation, concluding that Rebo's subjective expectation of privacy in his residence was objectively unreasonable. Since Rebo had no right to be at the residence due to the no contact order, he held no privacy right that society was willing to recognize as legitimate in the place where he was seized.

On appeal, Rebo asserts that even if he lacked an objective expectation of privacy in the family home, his status as a co-owner of the residence gave him a property interest that he could assert irrespective of his subjective privacy rights. We disagree.

**A. Rebo does not have standing to challenge the officer's warrantless entry into his residence because a court order prohibited Rebo from being within three hundred feet of that residence.**

"The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Fourth Amendment's purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct.

2206, 2213 (2018). Historically, the Fourth Amendment was " 'tied to common-law trespass' and focused on whether the Government 'obtains information by physically intruding on a constitutionally protected area.' " *Id.* (quoting *United States v. Jones*, 565 U.S. 400, 405 (2012)). Yet, Fourth Amendment jurisprudence has "evolved with the times." *State v. Maxim*, 165 Idaho 901, 905, 454 P.3d 543, 547 (2019). More recently, the Supreme Court has recognized that "property rights are not the sole measure of Fourth Amendment violations." *Soldal v. Cook Cnty.,* 506 U.S. 56, 64 (1992). In *Katz v. United States,* 389 U.S. 347, 351 (1967), the Court established that "the Fourth Amendment protects people, not places," and expanded the view that the Amendment also protects certain expectations of privacy, as long as society is willing to recognize such expectations as reasonable. *Maxim*, 165 Idaho at 905, 454 P.3d at 547 (internal quotations omitted).

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). "To show a violation of the Fourth Amendment's prohibition on unreasonable searches, the defendant 'must come forward with evidence sufficient to show [1] there was a Fourth Amendment search, [2 *the defendant] has standing to challenge the search*, and [3] the search was illegal.' " *State v. Hoskins*, 165 Idaho 217, 220–21, 443 P.3d 231, 234–35 (2019) (emphasis added) (quoting *State v. Holland*, 135 Idaho 159, 162, 15 P.3d 1167, 1170 (2000)). Thus, "even if a search is unreasonable, a defendant must have a privacy interest that was invaded by the search in order to suppress evidence discovered in the search." *State v. Mann*, 162 Idaho 36, 41, 394 P.3d 79, 84 (2017). Whether the defendant possesses such a reasonable privacy interest is given the shorthand moniker of "standing." *See Hoskins*, 165 Idaho at 221, 443 P.3d at 235 (explaining the term standing as "shorthand for the question [of] whether the moving party had a legitimate expectation of privacy . . . ." (citation omitted)). As this Court recently held in *Maxim*, "[s]tanding in the Fourth Amendment context is used as shorthand for the question of whether the defendant *personally* has a reasonable expectation of privacy in the place searched." 165 Idaho at 906, 454 P.3d at 548 (emphasis in original). When a defendant makes such a showing, "the burden will shift to the State to show an exception to the warrant requirement exists or that the search was reasonable under the circumstances." *Id.* at 905, 454 P.3d at 547.

Thus, this Court has long held that a person challenging a search or seizure has the burden of showing that he or she had a personal and legitimate expectation of privacy in the

place to be searched, and/or the persons or things to be seized. *See id.* at 906, 454 P.3d at 548; *see also State v. Pruss*, 145 Idaho 623, 626, 181 P.3d 1231, 1234 (2008) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980)). This question of standing presents a two-part inquiry:

> The first [question] is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy,"—whether . . . the individual has shown that "he seeks to preserve [something] as private." The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,' "—whether . . . the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

*Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citing *Katz*, 389 U.S. at 351–61 (internal citations omitted)). "The first inquiry is a question of fact; the second is a question of law." *State v. Snapp*, 163 Idaho 460, 463, 414 P.3d 1199, 1202 (Ct. App. 2018) (citing *Pruss*, 145 Idaho at 626, 181 P.3d at 1234).

The privacy-based approach applied by the district court supplements the traditional property-based approach of Fourth Amendment jurisprudence. Rebo argues he has standing under the traditional property-based approach because Officer Taylor trespassed when she entered his residence without permission. Rebo also points out that no exigent circumstances existed that justified Officer Taylor's warrantless entry into his residence. As a result, Rebo argues that because the methamphetamine was "fruit of the poisonous tree," the district court should have granted his motion to suppress the methamphetamine.

Notwithstanding these arguments, we affirm the district court's finding that Rebo has no standing to assert a constitutional violation here. We conclude under the facts of this case, under both the privacy and property-based theories of Fourth Amendment jurisprudence, that Rebo lacks standing to pursue his effort to suppress the evidence. Thus, we conclude that any further analysis as to Rebo's remaining claims on appeal is unnecessary.

1. <u>Rebo lacks standing because he had no reasonable expectation of privacy in his residence at the time of his arrest that society is willing to recognize as legitimate.</u>

"[O]ne who owns and possesses a house, almost always has a reasonable expectation of privacy in it." *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018). Even so, a "legitimate presence on the premises of the place searched, standing alone, is not enough to accord a reasonable expectation of privacy, because it creates too broad a gauge for measurement of Fourth Amendment rights." *Id.* (internal quotations omitted).

Although the [Supreme] Court has not set forth a single metric or exhaustive list of considerations to resolve the circumstances in which a person can be said to have a reasonable expectation of privacy, it has explained that "[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." The two concepts in cases like this one are often linked. "One of the main rights attaching to property is the right to exclude others," and, in the main, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude."

*Id.* (internal citations omitted). Thus, where a defendant is wrongfully present at the scene of a search, that defendant is unable to object to the legality of the search. *See id.* (citing *Rakas*, 439 U.S. at 141 n.9). As noted in *Rakas*, "[a] burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as legitimate." 439 U.S. at 143 n.12 (internal quotations omitted).

Under the privacy-based approach applied by the district court, Rebo lacks standing to challenge the alleged Fourth Amendment violation. While a "warrantless entry into a home is presumptively unreasonable," *Maxim*, 165 Idaho at 907, 454 P.3d at 549 (citing *Maland*, 140 Idaho at 822, 103 P.3d at 435), the key distinguishing fact of this case is that Rebo was prohibited from being at or in his home. Following Rebo's guilty plea to domestic assault, a valid no contact order prohibited his presence near the residence, requiring him to stay at least three hundred feet away from his wife and their property. Although Rebo had established a separate residence and understood the terms of the no contact order, he nevertheless chose to violate the order by returning to the property. The arresting officer knew the no contact order was valid—having just confirmed that information before proceeding towards Rebo; she pursued him for violating the order. Therefore, while Rebo may have held a subjective expectation of privacy, he had no expectation of privacy in his home that society would be willing to accept as reasonable under these circumstances. Just by being in or near the home, Rebo was violating a court order designed at its core to keep him away from the residence. *See Byrd*, 138 S. Ct. at 1527.

2. Due to the no contact order, Rebo did not possess the ability to exclude law enforcement from his home; as such, he lacks standing to assert that the officer trespassed by following him into his home.

Rebo argues that apart from the privacy related basis for his claim, he has standing under the traditional property-based approach to a Fourth Amendment analysis because Officer Taylor trespassed onto his property when she entered his residence without permission. Rebo's

argument gains footing from the Supreme Court's reminders that the reasonable expectation of privacy test from *Katz added to*, and did not *replace* the common law property-based test. *See United States v. Jones*, 565 U.S. 400, 409 (2012) ("the *Katz* reasonable-expectation-of-privacy test has been *added to,* not *substituted for,* the common-law trespassory test.") (emphasis in original); *see also Florida v. Jardines*, 133 S. Ct. 1409, 1417–18 (2013) (holding that traditional, property-based principles underpinning the Fourth Amendment, rather than *Katz's* privacy analysis, supported suppressing the evidence against Jardines when a drug dog trespassed on the home's curtilage). Thus, even when the *Katz* reasonable-expectation-of-privacy test informs the analysis in cases like this one, traditional property-based rights are likewise at play when the search or arrest takes place inside one's home.

We continue to recognize the sanctity of the home and the settled principle applicable in almost all situations, that " 'warrantless arrests in public places are valid,' but, absent another exception, such as exigent circumstances, officers may not enter a home to make an arrest without a warrant, even when they have probable cause." *Collins v. Virginia*, 138 S. Ct. 1663, 1672 (2018) (quoting *Payton v. New York,* 445 U.S. 573, 587–590 (1980)). "That is because being arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home." *Id.* (internal quotations omitted). Nevertheless, as we recognized above, even a "legitimate presence on the premises of the place searched, standing alone, is not enough to accord a reasonable expectation of privacy, because it creates too broad a gauge for measurement of Fourth Amendment rights." *Byrd*, 138 S. Ct. at 1527 (internal quotations omitted).

"A common idiom describes property as a bundle of sticks—a collection of individual rights which, in certain combinations, constitute property. . . . Rights to exclude and to use are two of the most crucial sticks in the bundle . . . . State law determines . . . which sticks are in a person's bundle, and therefore defining property itself is a state-law exercise." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1937–38 (2019) (Sotomayor, J., dissenting) (internal citations and quotations omitted). Here, the no contact order did not remove Rebo's bundle, it merely removed some of his sticks. The no contact order listed Rebo's wife as the protected person and prohibited Rebo from being within three hundred feet of his wife or the residence. The no contact order also provided it was unlawful to violate the order. Thus, the no contact order removed Rebo's right to use and significantly diminished Rebo's right to exclude

8

others from the residence because Rebo could not exclude his wife, those permitted to enter by his wife, or law enforcement. Therefore, as a matter of state law, we hold that Rebo lost the right to exclude some others from and to use his property while he was subject to a no contact order; he had no right to exclude Officer Taylor from the premises. Rebo's motion to suppress based on her entry into the home was properly denied.

The New Hampshire Supreme Court recently answered the same question posited here in *State v. Boyer*, 133 A.3d 262 (2016). There, the court resolved whether a defendant has standing to challenge a search of his residence when a bail order prohibited him from being within one hundred feet of his residence. *See id*. at 263. On appeal, the defendant argued "[r]egardless of whether [he] had a right to be in the apartment himself, there is no evidence that the bail order deprived [him] of his right to exclude outsiders from the apartment, and, therefore, he had standing under *Jardines* to challenge the physical intrusion by the police into the apartment." *Id*. at 269 (internal quotations omitted). The court disagreed and explained:

> The search did not violate the defendant's constitutional rights as recognized in *Jardines* for largely the same reasons as those articulated in our analysis of the defendant's expectation of privacy: just as the bail order eliminated any reasonable expectation of privacy that the defendant might have had in the apartment at the time of the search, it also removed, at least temporarily, any property interest that might have allowed him to challenge the search. *Cf.* [*Jardines*, 133 S. Ct. at 1419)] (Kagan, J., concurring) ("It is not surprising that in a case involving a search of a home, property concepts and privacy concepts should . . . align. The law of property naturally enough influences our shared social expectations of what places should be free from governmental incursions." (quotations and brackets omitted)).

> "A common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property." *United States v. Craft*, 535 U.S. 274, 278, 122 S. Ct. 1414, 152 L.Ed.2d 437 (2002). One of these rights is the right to exclude others. *Rakas v. Illinois*, 439 U.S. 128, 143 n.12, 99 S. Ct. 421, 58 L.Ed.2d 387 (1978). As we noted earlier, prior to the issuance of the bail order, the apartment was the defendant's home. However, the bail order prohibited the defendant from being present in the apartment with [his girlfriend] and required him to live [elsewhere]. Thus, just as this order affected his expectation of privacy in the apartment, it also temporarily removed those "sticks" of his property interest in the apartment that would otherwise give rise to the right to exclude others. . . . Accordingly, because the defendant was prohibited from being present in the apartment with [his girlfriend], *at the time of the search* he lacked the property interest necessary to invoke the protections of the trespass theory enunciated in *Jardines*.

*Id*. at 269–70.

9

This reasoning goes further than we wish to go, given that it held the defendant lost *all* right to exclude others from his property. Even so, we adopt the New Hampshire court's reasoning to the extent that it applies to the right of a criminal defendant to exclude those directly associated with enforcing or investigating a no contact order or an order which precludes access to certain property. Such a defendant would also have no right to exclude anyone a co-owner might wish to invite into the residence. A criminal defendant loses those sticks in cases like this one.

It is undisputed that prior to the issuance of the no contact order, the home was Rebo's. Still, once the no contact order was issued, like the bail order in *Boyer*, it prohibited Rebo from being within three hundred feet of the residence. In fact, Rebo had to live at a different location, a detail he acknowledged before the court. The no contact order temporarily removed some of Rebo's property interest in the residence; those "sticks" were temporarily removed from his bundle while the lawfully issued no contact order was in effect. As a result, the property-based trespass theory from *Jardines* does not provide Rebo with Fourth Amendment standing to challenge Officer Taylor's warrantless entry. To hold otherwise would be both legally and practically unsound. As Justice Kagan has reasoned, in the Fourth Amendment context, property concepts and privacy concepts should align. *See Jardines*, 133 S. Ct. at 1419 (Kagan, J., concurring). Therefore, we take this opportunity to hold that motions to suppress that involve entry into a home, like this one, require the trial court to consider the totality of the circumstances from both the perspective of *Katz's* reasonable-expectation-of-privacy test and *Jardines'* property-based trespassory principles. Under both standards, we hold Rebo lacked standing to challenge Officer Taylor's warrantless entry into the residence because he was prohibited by court order from being within three hundred feet of the residence. Thus, we affirm the district court's denial of Rebo's motion to suppress.

## VI. CONCLUSION

We affirm the district court's denial of Rebo's motion to suppress based on his lack of standing to pursue the motion.

Justices BURDICK, BRODY, STEGNER and MOELLER CONCUR.