IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42666

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Opinion No. 27 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: April 6, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JEFFREY B. MELLING, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Order granting motion to suppress, reversed and case remanded.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for appellant. Russell J. Spencer argued.

Sara B. Thomas, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for respondent. Jenny C. Swinford argued.

---

HUSKEY, Judge

The State appeals from the district court's order granting Jeffrey B. Melling's motion to suppress evidence found during a warrantless search of a lockbox. We reverse and remand.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts in this case were stipulated to by the parties and are as follows:

Officer Harward responded to a report of a fight in Nampa, Idaho. When he arrived on the scene, he observed two males, Melling and Brian Tait, arguing on the lawn in front of the residence. Officer Harward separated the men and spoke with Melling. Melling identified himself and stated that he and his girlfriend had gotten into an argument earlier that day while they were at a park. Melling further stated that he then got into an argument with his roommate,

Tait, over the fact that Melling and his girlfriend had been arguing. Melling stated that Tait walked up behind him and punched him in the side of the head, leading to further fighting.

While Officer Harward was speaking with Melling, Melling's girlfriend came outside and threw a lockbox on the grass, claiming it belonged to Melling. Melling stated he had never seen the box before and had no idea who it belonged to. Melling became nervous, but continued telling Officer Harward about the events of the day. Officer Harward then spoke with Melling's girlfriend, who told Officer Harward that Melling bought the lockbox in California, and it contained drug paraphernalia and a vape device. Melling's girlfriend then showed Officer Harward where the box had allegedly been located, next to Melling's wallet in the bedroom where Melling and his girlfriend were staying.

Officer Harward went back outside to speak with Melling, who again told Officer Harward that nothing in the box was his. Officer Harward opened the lockbox. Inside, Officer Harward found a black scale, a pipe with white crystal substance, and some matches, as well as, two fake identification cards. Officer Harward again asked Melling what was inside the box, and Melling denied knowledge of the contents. Officer Harward arrested Melling based on the statements of Melling's girlfriend that Melling owned the box. Officer Harward handcuffed Melling. As Officer Harward escorted Melling to the patrol vehicle, he observed Melling walking strangely, keeping his legs tightly together and only bending at the knees. Officer Harward had Melling separate his feet to search for weapons or other paraphernalia and when doing so, a glass pipe fell from Melling's shorts and shattered on the ground. Melling denied ownership and knowledge of the pipe.

Officer Harward later tested the shattered portion of the glass pipe that fell from Melling's shorts; it tested presumptively positive for methamphetamine. Officer Harward then received a call from the officer who transported Melling to the Canyon County Jail. He advised Officer Harward that he had located a bag of white crystal substance inside Melling's wallet, which later tested presumptively positive for methamphetamine.

The State charged Melling with possession of methamphetamine. Melling filed a motion to suppress the evidence, arguing that it was obtained by an unlawful search and seizure. After a hearing on the motion, the district court granted Melling's motion, holding that Melling did not abandon the lockbox and that the search, therefore, violated the Fourth Amendment. The State timely appeals.

2

## II.
## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The salient facts in this case are not in dispute; only their legal significance is at issue. Therefore, we exercise free review of the trial court's legal conclusion that Melling did not abandon the lockbox. *State v. Agundis*, 127 Idaho 587, 590, 903 P.2d 752, 755 (Ct. App. 1995).

## III.
## ANALYSIS

The district court, relying primarily on *State v. Isom*, 641 P.2d 417 (Mont. 1982), held that Melling did not abandon the lockbox because his disclaimer of ownership was likely an effort to avoid incrimination as guaranteed by the Fifth Amendment and because the investigating officer had reasonable indicia that the box belonged to Melling. The State argues that Idaho does not recognize a "trying to avoid incrimination" exception to the abandonment rule. We agree with the State.

A person challenging a search has the burden of showing that he or she had a legitimate expectation of privacy in the item or place searched. *State v. Pruss*, 145 Idaho 623, 626, 181 P.3d 1231, 1234 (2008). That involves a two-part inquiry: Did the person have a subjective expectation of privacy in the object of the challenged search? Is society willing to recognize that expectation as reasonable? *Id.* The first inquiry is a question of fact; the second is a question of law. *Id.* Assuming, *arguendo*, that Melling demonstrated a subjective expectation of privacy in the lockbox, we hold that society is not willing to recognize an expectation of privacy as reasonable where the owner abandoned the item.

One who voluntarily abandons property prior to the search cannot be said to possess the requisite privacy interest. *Abel v. United States*, 362 U.S. 217, 241 (1960). Abandonment, in the

Fourth Amendment context, occurs through words, acts, and other objective facts indicating that the defendant voluntarily discarded, left behind, or otherwise relinquished his interest in his property. *See Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996); *United States v. McDonald*, 100 F.3d 1320, 1327 (7th Cir. 1996) (overruled on other grounds); *United States v. Ramos*, 12 F.3d 1019, 1023-24 (11th Cir. 1994).

Idaho courts have held that disclaimer of ownership or possession constitutes abandonment. *See State v. Zaitseva*, 135 Idaho 11, 13 P.3d 338 (2000); *State v. Harwood*, 133 Idaho 50, 981 P.2d 1160 (Ct. App. 1999). In *Harwood*, police officers received information that a bondee was hiding in Harwood's rented hotel room. *Harwood*, 133 Idaho at 51, 981 P.2d at 1161. The officers knocked on Harwood's door and were given permission to enter and search the room. *Id.* After searching the room, one of the officers noticed a fanny pack under the bed and asked Harwood about it. *Id.* Harwood said something like, "That's not mine." *Id.* The officer instructed Harwood not to reach under the bed while everyone was discussing the fanny pack. *Id.* During the conversation, Harwood again disclaimed ownership of the fanny pack, stating that it belonged to a woman he met at a bar. *Id.* The officers asked if they could take the fanny pack as found property, and Harwood consented. *Id.* at 52, 981 P.2d at 1162. The officers searched the fanny pack and discovered cash, methamphetamine, and identification belonging to Harwood. *Id.* The district court held that Harwood had abandoned the fanny pack. *Id.* On appeal, the Court stated that the property had been abandoned spontaneously and that the abandonment was not the result of any police intimidation or interrogation. *Id.* at 53, 981 P.2d at 1163.

In *Zaitseva*, a police officer pulled over a car for speeding. *Zaitseva*, 135 Idaho at 12, 13 P.3d at 339. Neither the driver nor the passenger, Zaitseva, owned the car or had a valid driver's license. *Id.* The officer received permission to search the car from the driver, Zaitseva, and the owner (via telephone). *Id.* As the driver exited the car, she tried to remove a bag. *Id.* The officer asked the driver to leave the bag in the car. *Id.* Both parties denied ownership of the bag. *Id.* The officer searched the bag and found documents that led to Zaitseva's conviction for possession of a forged check. *Id.* On appeal, Zaitseva argued that the scope of consent to search the car did not extend to the bag. *Id.* at 13, 13 P.3d at 340. The Court affirmed the district court's denial of the motion, holding that consent to search a car includes consent to search containers. *Id.* at 11, 13 P.3d at 338. Additionally, the Court held that Zaitseva had abandoned

4

her privacy interest in the contents of the bag when she denied ownership in response to the officer's inquiry. *Id.* at 13, 13 P.3d at 340.

Here, the parties stipulated to the following facts: Melling told Officer Harward that he had never seen the box before and had no idea who it belonged to; Melling's nervousness was attributed to the presence of the lockbox; Melling told Officer Harward that nothing in the box was his; and Melling denied knowledge of the contents of the box. The district court did not find that Melling's repeated denials of ownership were in response to police intimidation or interrogation. Therefore, we hold that Melling's words, actions, and the objective facts indicate that Melling voluntarily abandoned his privacy interest in the lockbox. Society is not willing to recognize a privacy interest in abandoned property.

Despite Melling's denials of ownership, the district court held Melling did not abandon the lockbox for two reasons: (1) Melling was trying to avoid incrimination, and (2) Officer Harward had "reasonable indicia" that the lockbox belonged to Melling.

In determining that Melling did not abandon the lockbox because he was only denying ownership to avoid incrimination, the district court relied on *Isom*, a Montana Supreme Court case. However, in *Isom*, the court found that the disclaimer of property was made during a custodial interrogation prior to the officers giving the *Miranda*[1] warning. *Isom*, 641 P.2d at 422. Melling does not contend that his statements were made during custodial interrogation. *Isom* is inapposite.

Furthermore, there is no Idaho case that provides a "trying to avoid incrimination" exception to the abandonment rule. In fact, in a concurring opinion, Judge Schwartzman observed, "There is no such thing as a right against consensual self-incrimination. There is only a right against compelled self-incrimination." *Harwood*, 133 Idaho at 54, 981 P.2d at 1164 (Schwartzman, J., concurring).

Additionally, neither *Harwood* nor *Zaitseva* analyzed whether the officers had reasonable indicia that the container belonged to the abandoning party, presumably because such an inquiry is unnecessary, as it neither informs whether the defendant had a subjective privacy interest in the item or whether society would recognize that interest as legitimate. *See U.S. v. Colbert*, 474 F.2d 174 (5th Cir. 1973). In *Colbert*, two police officers observed Colbert and Reese walking

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

5

down the street carrying briefcases. *Id.* at 175. Because Colbert matched the description of a wanted felon, the officers approached the two men. *Id.* As the officers approached, Colbert and Reese set their briefcases on the sidewalk. *Id.* Colbert and Reese identified themselves as book salesmen, and when the officers asked what was in the briefcases, Colbert and Reese stated that they did not need to show the officers anything and denied ownership and knowledge of the briefcases. *Id.* After being frisked, Colbert and Reese began walking away, but they were stopped and arrested on other charges. *Id.* While in the police car, they again denied knowing anything about the briefcases. *Id.* The officers then searched the briefcases and found sawed-off shotguns. *Id.* The Court found that Colbert and Reese abandoned the briefcases when they disclaimed ownership and began walking away from the briefcases, even though the officers observed the two men carry and set down the briefcases. *Id.* at 177. Because they abandoned the briefcases, Colbert and Reese had no expectation of privacy in them. *Id.* Tellingly, the Court's analysis did not analyze the officers' subjective beliefs nor conduct an objective analysis of whether the officers had reason to believe that the abandoning parties were in fact the owners. This would be so because it would neither clarify the defendant's subjective belief or the interest society is willing to recognize. Therefore, Officer Harward's subjective beliefs about ownership of the lockbox is irrelevant to the issue of abandonment.

## IV.

## CONCLUSION

Based on the foregoing, we hold that Melling abandoned his privacy interest when he disclaimed ownership of the lockbox and its contents, and there is no expectation of privacy in abandoned property that society would deem reasonable. We further hold that Idaho does not have a "trying to avoid incrimination" exception to its abandonment analysis. Finally, we hold that an officer's subjective belief concerning the veracity of a defendant's disavowal of ownership is irrelevant to determining whether a defendant abandoned the property. Because the search of the lockbox was permissible, the subsequent arrest and discovery of evidence were legal. Therefore, the district court's order granting Melling's motion to suppress is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge GUTIERREZ and Judge GRATTON **CONCUR**.