**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48634**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **Filed: February 17, 2022** |
| **Plaintiff-Appellant,** ) | |
| ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | |
| **TYREL GIBBS PORTER,** ) | |
| ) | |
| **Defendant-Respondent.** ) | |
| ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Franklin County. Hon. Mitchell W. Brown, District Judge.

Order granting motion to suppress, <u>reversed</u>; and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for appellant. Andrew V. Wake argued.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for respondent. Kimberly A. Coster argued.

_____

HUSKEY, Judge

The State appeals from the district court's order granting Tyrel Gibbs Porter's motion to suppress. For the reasons set forth below, we reverse the court's order and remand the case for further proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts in this case are undisputed by the parties. According to the district court's factual findings, in the early morning hours of December 28, 2019, law enforcement received a call that an individual had wandered into a home and was acting peculiar. Deputy Knudsen and Deputy Grunig responded to the call. Deputy Knudsen arrived near the reporting party's home and saw Porter walking along the roadway in the snow, in very cold weather, wearing only underwear. Deputy Knudsen approached Porter and asked if he was okay. Porter had both hands in the air,

1

was shaking, and told Deputy Knudsen that he was very cold and needed help; Porter asked if he could get into Deputy Knudsen's police truck. Deputy Grunig arrived on the scene, and Deputy Knudsen told Porter that he could get into Deputy Grunig's truck. Porter got into the truck, and Deputy Knudsen retrieved a blanket from his truck and gave it to Porter.

Deputy Knudsen asked Porter whether he had consumed any alcohol or drugs; Porter responded that he had consumed "two methamphetamine rocks." Deputy Knudson also asked Porter why he was not wearing any clothes. Porter said that the individuals in the home he had entered had given him some clothes, but he had taken them off because he did not know whose clothes they were. Paramedics arrived approximately ten minutes later and transported Porter to the hospital. At some point prior to being transported to the hospital, Porter was asked where his clothing was and he replied that he did not know. Deputy Knudsen followed the ambulance to the hospital where he remained outside Porter's room.

Meanwhile, Deputy Grunig continued to the address of the reporting party. Deputy Grunig accidentally drove past the house, and as he was turning around, he noticed some clothes alongside the road approximately 500 yards from where he made contact with Porter. Deputy Grunig stopped and went over to the clothing to see if he could identify to whom it belonged. The clothing consisted of a gray and yellow coat and a pair of black snow pants; in the pocket of the pants, Deputy Grunig found a bank card with Porter's name on it. Deputy Grunig put the clothing in his truck and continued to the reporting party's address. Deputy Grunig later found the clothing given to Porter by the reporting party behind the house. After speaking with the reporting party, Deputy Grunig went to the sheriff's office where he again searched the clothing found on the roadside. In the pocket of the snow pants, Deputy Grunig found methamphetamine and additional forms of identification belonging to Porter.

Deputy Grunig went to the hospital and explained to Deputy Knudsen that he planned to arrest Porter for possession of a controlled substance. Before arresting Porter, Deputy Grunig spoke with Porter and asked him to identify the clothing that he was missing. Porter identified his clothing as a gray and yellow coat and black snow pants. Deputy Grunig then placed Porter under arrest for possession of methamphetamine.

A criminal complaint was filed December 30, 2019, charging Porter with possession of methamphetamine. Porter waived his preliminary hearing and an information was filed January 14, 2020. On July 23, 2020, Porter entered a plea of not guilty and trial was set for

2

October 26-27, 2020.  On September 17, 2020, Porter filed a motion to suppress the evidence obtained from the search of his clothing.  The State filed a memorandum in opposition, arguing that the motion was untimely under Idaho Criminal Rule 12 and, alternatively, that Porter had no reasonable expectation of privacy in the clothes because he had voluntarily abandoned them.

The district court held a hearing on the motion.  The district court addressed the State's timeliness objection, noting that if the court heard the motion, the motion would not be resolved without infringing on Porter's speedy trial rights.  Porter agreed to waive his right to a speedy trial to allow the district court time to rule on his motion to suppress.  Without making any finding of good cause or excusable neglect for Porter's failure to comply with the I.C.R. 12 deadline, the district court denied the State's timeliness objection and proceeded with the motion to suppress hearing.  Following the hearing, the district court allowed the parties to submit post-hearing briefing.  Porter submitted a brief; the State did not.  In his brief, Porter argued that he "did not have sufficient capacity to knowingly abandon" his clothes.  He also argued that once Deputy Grunig found the clothes and identified them as belonging to Porter, a warrant was required to conduct the additional search at the sheriff's office.

The district court also ordered the parties to provide supplemental briefing on the application of the community caretaking doctrine.  Both parties filed a supplemental memorandum.  The State argued the search of Porter's clothes was justified by the community caretaking function because Officer Grunig was at the scene for the purpose of rendering aid to Porter and because once Porter said he had consumed methamphetamine, Officer Grunig had a responsibility to ensure any hazardous substance (methamphetamine) was not left in public.  Porter asserted that while the initial search of his clothing may have been justified by the community caretaking function, the subsequent search of his clothing at the sheriff's office was not.  Porter argued the community caretaking function did not justify the second search because at the time the search took place, Porter's health and safety had been secured, emergency services were no longer being provided, and there was no danger of potential evidence disappearing or being destroyed.

The district court granted the motion to suppress.  The court found that there was "**no evidence offered by the State to suggest that Porter had abandoned any further interest in his clothing.**"  The district court further found that Porter had not abandoned his clothing for purposes of the Fourth Amendment:

3

Based on Porter's statements to Deputy Knudsen and Deputy Grunig as well as Porter's physical and mental state at the time of the encounter, it is clear that Porter was not in a state of mind to affirmatively abandon any possessory interest in his clothing or his expectation of privacy with respect to his clothing. Not only was Porter wandering around outside in sub-freezing temperatures wearing only his boxer shorts, but Porter admitted that he had consumed "two rocks of methamphetamine." Under the totality of the circumstances and the lack of any objective evidence, the Court finds that Porter had not abandoned his clothing for purposes of the Fourth Amendment. Instead, the Court finds it more likely that Porter, being under the influence of methamphetamine, removed his clothing for some drug induced purpose and forgot where he left them.

The court concluded that Porter maintained a reasonable expectation of privacy in his clothing from the time he removed it to the time he identified the clothing during his discussion with Deputy Grunig at the hospital. The district court also found that although Deputy Grunig was acting within his community caretaker capacity when he conducted the initial search of the clothing, there was no evidence to justify the second search of the clothing pursuant to the community caretaker function.

The State timely appeals from the district court's order granting Porter's motion to suppress.

## II.

## STANDARD OF REVIEW

The power to extend or shorten the required time for filing a motion to suppress under I.C.R. 12(d) is discretionary. *State v. Alanis*, 109 Idaho 884, 887-88, 712 P.2d 585, 588-889 (1985). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

4

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

**A.      The District Court Abused Its Discretion by Considering Porter's Untimely Motion to Suppress Without Finding Good Cause Or Excusable Neglect**

The State argues the district court abused its discretion when it considered Porter's motion to suppress without requiring Porter to provide an explanation for the untimeliness of the motion and without making a finding that good cause or excusable neglect existed to excuse the untimely motion. Porter asserts the record contains evidence of good cause for enlarging the time to file the suppression motion and, therefore, the district court properly exercised its discretion to hear Porter's untimely motion. Porter points to various circumstances in support of his argument.

Idaho Criminal Rule 12 governs the time limits for filing pretrial motions, including motions to suppress evidence. Motions to suppress evidence must be filed within twenty-eight days of the entry of a plea of not guilty or seven days before trial, whichever is earlier, unless the court, in its discretion, shortens or enlarges the time. I.C.R. 12(d). The trial court may relieve a party of failure to comply with this deadline for good cause shown or for excusable neglect. I.C.R. 12(d). The burden of showing good cause or excusable neglect is on the party who has missed the prescribed deadline. *State v. Gleason*, 130 Idaho 586, 591, 944 P.2d 721, 726 (Ct. App. 1997). Idaho Criminal Rule (12)(d) required Porter to file his motion to suppress by August 20, 2020; however, Porter did not file his motion to suppress until September 17, 2020. Porter does not dispute that his motion to suppress was untimely, that he did not submit argument or evidence to explain the untimely filing and establish good cause or excusable neglect, or that the district court overruled the State's timeliness objection without explicitly finding good cause or excusable neglect.

Idaho Criminal Rule 12 is a procedural rule that mandates the time by which a motion to suppress is to be filed and the standards by which a trial court may shorten or enlarge that time. Pursuant to I.C.R. 12, trial courts may relieve a party of the failure to comply with the timeliness requirement of the rule only for good cause shown or excusable neglect. Here, the district court erred in two ways: first, by failing to require Porter to offer any explanation of good cause for the delay or to show that the motion was untimely due to excusable neglect; and, second, when it failed to make a finding of good cause or excusable neglect to excuse the untimely filed motion.

5

On appeal, Porter makes multiple arguments he contends support a finding of good cause; however, in the district court, he did not assert *any* argument that good cause or excusable neglect existed. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019). Because Porter did not advance these arguments before the district court, he cannot now assert these arguments for the first time on appeal. *Id.* Moreover, although Porter cites cases that hold this Court may extrapolate implicit findings of fact from the record and uphold those if they are supported by the record, Porter does not provide any argument about what implicit factual findings the district court made, including whether the district court found good cause, excusable neglect, or both. Similarly, he has not provided argument explaining how we should extrapolate the unidentified implicit factual findings to the district court's legal conclusions.

This Court has held that if no good cause or excusable neglect is established, it is error for a trial court to entertain an untimely motion to suppress. *State v. Dice*, 126 Idaho 595, 597, 887 P.2d 1102, 1104 (Ct. App. 1994). In *Dice*, the State objected to an untimely filed motion to suppress. *Id.* The district court denied the State's motion because it believed it should consider the merits of the motion regardless of the untimely filing of the motion. *Id.* On appeal, this Court reasoned:

> Dice's counsel was not required or given the opportunity to offer any good cause for the delay or to show that the lateness was due to excusable neglect. It appears that the district court decided to hear the motion because it felt the motion was meritorious. This, we conclude, was error.

*Id.* We further noted that, "Allowing untimely motions to be heard because they appear meritorious eviscerates the purpose of the rule." *Id.*

The objective of statutes and rules regulating procedure in the courts is to promote the administration of justice. These rules should be construed "to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." I.C.R. 2(a). Here, it appears the district court decided to address the merits of the motion before applying I.C.R. 12 to determine whether it had the authority to hear the motion. As we held in *Dice*, this was error. Absent a finding of good cause or excusable neglect, the district court should not have considered the untimely motion. Thus, the district court abused its discretion by considering Porter's untimely motion to suppress without first making the requisite finding regarding its timeliness. Although we conclude that the district court erred by failing to require Porter to offer reasons for the delay,

6

we do not remand for a further hearing on the timeliness of the motion because of our decision on the merits of the motion to suppress.

**B.      The District Court Erred by Finding That Porter Had a Reasonable Expectation of Privacy in His Clothing**

The State asserts the district court erred in two ways when it found that Porter had a reasonable expectation of privacy in his clothing.  First, the State argues the district court erred by improperly placing the burden on the State to show that Porter did not have a reasonable expectation of privacy in his clothing.  Second, the State contends that even if it was the State's burden to show that Porter did not have a reasonable expectation of privacy, the district court erred by finding that the State did not meet that burden.  In response, Porter argues the State has argued the wrong Fourth Amendment test; Porter contends his clothes are "effects" within the text of the Fourth Amendment and, thus, are expressly protected and not subject to the reasonable expectation test.  Therefore, Porter asserts the question presented is whether Porter abandoned his clothing, and he contends the district court correctly found that he did not.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment.  *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995).  The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances.  *Id.*

This Court has addressed the burdens of proof in a suppression motion:

> On a suppression motion challenging a warrantless search, the defendant bears the evidentiary burden to show that a search occurred, that there was no warrant, and that the defendant has "standing" to challenge the search.  By "standing" we mean that the defendant had a reasonable expectation of privacy in the place or thing that was searched.  If the defendant makes this showing, then the burden shifts to the State to prove the applicability of an exception to the warrant requirement.

*State v. Marshall*, 149 Idaho 725, 727, 239 P.3d 1286, 1288 (Ct. App. 2008) (internal citations omitted).

To establish standing, a person challenging a search has the burden of showing that he or she had a legitimate expectation of privacy in the item or place searched.  *State v. Pruss*, 145 Idaho 623, 626, 181 P.3d 1231, 1234 (2008).  That involves a two-part inquiry:  (1) Did the person have a subjective expectation of privacy in the object of the challenged search?; and (2) Is society

7

willing to recognize that expectation as reasonable? The first inquiry is a question of fact; the second is a question of law. *Id.*

Porter asserts that because the district court found that Porter's clothing was an "effect" within the meaning of the Fourth Amendment, Porter was not required to show that he had a reasonable expectation of privacy in his clothing. We disagree. Regardless of the origins of Porter's claimed privacy interest in his clothing, such an interest is not absolute. Just as individuals can relinquish their privacy interests in other effects such as a purse or a duffel bag, Porter could also relinquish his privacy interest in his clothes. *See State v. Snapp*, 163 Idaho 460, 463, 414 P.3d 1199, 1202 (Ct. App. 2018). In other words, just because an item is an "effect" does not mean an individual retains a privacy interest in it.

An expectation of privacy is objectively reasonable when it is legitimate, justifiable, and one that society should both recognize and protect. *State v. Fancher*, 145 Idaho 832, 837, 186 P.3d 688, 693 (Ct. App. 2008). When considering whether an expectation of privacy is reasonable, this Court has considered the following factors: ownership, possession, control, ability to regulate access to the evidence, historical use of the item seized, and the totality of the surrounding circumstances. *State v. Johnson*, 126 Idaho 859, 862, 893 P.2d 806, 809 (Ct. App. 1995). Society does not recognize as reasonable a privacy interest in abandoned property. Consequently, a person has no Fourth Amendment privacy interest in abandoned property. *State v. Ibarra*, 164 Idaho 349, 353, 429 P.3d 890, 894 (Ct. App. 2018). Abandonment occurs through words, acts, and other objective facts indicating that the defendant voluntarily discarded, left behind, or otherwise relinquished his or her interest in his or her property. *State v. Ross*, 160 Idaho 757, 759, 378 P.3d 1056, 1058 (Ct. App. 2016); *State v. Melling*, 160 Idaho 209, 211-12, 370 P.3d 412, 414-15 (Ct. App. 2016). While a disclaimer of ownership or possession constitutes abandonment, the lack of a disclaimer of ownership or possession is not necessarily dispositive proof that an object has not been abandoned. *Snapp*, 163 Idaho at 463, 414 P.3d at 1202.

The district court held that there was "**no** evidence offered by the State to suggest that Porter had abandoned any further interest in his clothing." This holding is erroneous for two reasons. First, it misstates the burden of proof. It was Porter who had the burden of proof to demonstrate that he had a subjective expectation of privacy in the clothing and that society is willing to recognize such an interest as reasonable. *Pruss*, 145 Idaho at 626, 181 P.3d at 1234. Second, the finding was not supported by substantial and competent evidence.

At the suppression hearing, Porter argued that the officers "had already determined that Mr. Porter was not operating in a sound mind at the time, that he was mentally impaired and needed some help." In his post-hearing briefing, Porter again alleged he could not knowingly abandon his clothing because he did not have the capacity to do so. This argument does not accurately reflect the testimony or establish that Porter's actions were involuntary. There was neither evidence of police misconduct or Porter's impairment nor was there any authority provided for the proposition that voluntary intoxication renders abandonment involuntary.

Notwithstanding that it was Porter's burden to establish he had a legitimate privacy interest in the abandoned clothing, the district court concluded that due to Porter's voluntary intoxication, it was "more likely" that Porter "removed his clothing for some drug induced purpose and forgot where he left them" and, therefore, the discarding of the clothing was not voluntary. This factual finding is unsupported in the record, and the district court incorrectly applied the law.

In the context of abandonment, abandonment is involuntary where it is done at the request of illegal police activity. *Ross*, 160 Idaho at 760, 378 P.3d at 1059. No Idaho case holds abandonment is involuntary where the acts leading to the abandonment are the result of voluntary intoxication rather than illegal police conduct. Porter cites to *State v. Brown*, 155 Idaho 423, 313 P.3d 751 (Ct. App. 2013) and argues that the holding "suggests by analogy that obvious insufficient mental capacity prevents an individual from having the ability to voluntarily abandon property and thus retain the reasonable expectation of privacy in the same." The issue in *Brown* was which party carried the burden of persuasion in establishing voluntariness of a confession. *Id.* at 431, 313 P.3d at 759. This Court noted that although the State did not present evidence about the circumstances of the interrogation or Brown's mental acuity at the time, "Brown did not even allege that he made his statements because of coercive police activity, which is a necessary predicate to a finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* Contrary to Porter's argument, *Brown* supports the proposition that coercive police activity is a necessary predicate to a determination regarding the voluntariness of a suspect's conduct.

Here, the State met its burden of proof by establishing a prima facie case of Porter's voluntary abandonment of the clothing both through the totality of circumstances demonstrating what Porter did and by establishing there was no illegal police conduct or coercion causing Porter to remove and discard his clothing. The burden of persuasion then shifted to Porter to establish

9

the involuntariness of the abandonment. Porter failed to meet this burden both because he cannot show police misconduct and because he has provided no authority to support his contention that voluntary intoxication negates the voluntary element of abandonment under the Fourth Amendment.[1]

The evidence presented to the district court showed that Porter removed his clothes, put them on the side of the road, and left them there. When law enforcement asked Porter about his clothes, he said he did not know where they were. Absent an allegation or showing of police misconduct, it is not relevant *why* Porter removed his clothing and left them on the roadside; the relevant inquiry is *whether* Porter removed and discarded his clothing.[2] Porter's words and actions indicate that when Porter removed his clothing and left it on the side of the road, he voluntarily removed and discarded his clothing, thereby extinguishing his privacy interest in the clothing. There was no evidence of police misconduct or coercion and, thus, there was no evidence or authority presented upon which the district court could conclude that Porter did not abandon his clothing for purposes of the Fourth Amendment. As a result, the district court's finding that Porter did not abandon his clothing is erroneous because the factual predicate for that legal conclusion is not supported by substantial and competent evidence.[3]

Under the totality of the circumstances, Porter's words, his actions, and objective facts demonstrate that Porter voluntarily abandoned his clothing when he removed it and left it on the side of the road. Because Porter voluntarily abandoned his clothing, he did not have standing to challenge the search; the district court erred in holding otherwise.

---

[1]     We note that Idaho Code § 18-116 does not permit an individual who commits a crime while voluntarily intoxicated to assert his or her voluntary intoxication as a defense. Similarly, voluntary intoxication may not be considered in determining a defendant's mental state where the defendant's mental state is an element of the offense, absent a specific circumstance not at issue here. *See* I.C. § 18-116. Neither Porter nor the district court provided any authority that would permit voluntary intoxication as a defense to abandonment under the Fourth Amendment when such a defense is otherwise unavailable.

[2]     There is also no evidence in the record that when Porter removed and discarded his clothes, he attempted to shield the clothing from the public or exert any control over it or that the clothes were lost or mislaid.

[3]     To the extent Porter asks this Court to apply the common-law trespass test to determine whether an unconstitutional search occurred, we decline to address it because Porter did not raise this argument before the district court. *See State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019).

## IV.
## CONCLUSION

The district court erred by considering Porter's untimely motion to suppress without finding good cause or excusable neglect for Porter's failure to comply with the I.C.R. 12(d) deadline. The district court also erred when it granted Porter's motion to suppress. Accordingly, the district court's order granting Porter's motion to suppress is reversed, and the case is remanded for further proceedings consistent with this opinion.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.