**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49886**

ROBERT LEE STARK,       )
         )
        Plaintiff-Appellant,     )       **Boise, December 2022 Term**
         )
v.          )       **Opinion filed: January 30, 2023**
         )
STATE OF IDAHO,       )       **Melanie Gagnepain, Clerk**
         )
        Respondent.      )
_____)

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Roger B. Harris, District Judge.

The district court's judgment is <u>affirmed.</u>

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for Appellant. Andrea Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Kale Gans argued.

_____

BEVAN, Chief Justice.

This case comes to the Court on a petition for review from the Idaho Court of Appeals. Robert Lee Stark appeals from the judgment dismissing his petition for post-conviction relief. In his petition, Stark alleged his trial counsel rendered ineffective assistance for failing to file a motion to suppress the contents of a backpack that was searched incident to Stark's arrest. The district court dismissed Stark's ineffective assistance of counsel claim, finding Stark did not show deficient performance or prejudice. The district court found that even if a motion to suppress had been filed, it would have been denied, either because Stark disclaimed ownership of the backpack before it was searched or because the contents of the backpack would have been inevitably discovered. Stark challenges the district court's ruling by arguing that a motion to suppress would have been granted because: (1) the backpack was not lawfully searched incident to his arrest, (2) the contents of the backpack would not have been inevitably discovered, and (3) his disclaimer of ownership was legally ineffective. Stark appealed to the Court of Appeals, which affirmed the

1

dismissal. Stark then petitioned for review to this Court, which was granted. For the reasons below, we affirm the district court's decision.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

On July 27, 2018, officers served a felony arrest warrant on Ariel Stark at a residence in Twin Falls, Idaho. While doing so, the officers observed her husband, Robert Stark, in the area wearing a backpack and holding a dog on a leash. As they were arresting Ariel, officers learned Stark had aided Ariel while knowing she was a wanted felon. Consequently, officers told Stark he was also under arrest for acting as an accessory and for harboring a wanted felon. Prior to being placed into handcuffs, the officers allowed Stark to tie up his dog and "shrug off" the backpack he was carrying over his shoulder throughout their encounter. In full view of the officers, Stark tied up his dog, removed his backpack, and placed it on the ground. After doing this, Stark walked a couple of feet away from the backpack where officers handcuffed him and moved him to a police vehicle to be searched. The backpack was also picked up and taken to the police vehicle.

An initial search of Stark's outer clothing revealed no contraband or other suspicious items. An officer then began a search of the backpack. The backpack search took place in Stark's presence while he was handcuffed only a few feet away, surrounded by officers on both sides. The search was also captured on one officer's body camera video. Stark was wearing the backpack when officers first approached him, and the body camera footage shows Stark was holding the backpack during their conversation. As the district court found, Stark told the officers the backpack was not his and he did not know what was in it before it was searched. The search of the backpack revealed controlled substances and other evidence of drug trafficking.

Stark was ultimately arrested and charged with drug trafficking and harboring a fugitive. As the result of a plea agreement, Stark was sentenced to prison for three years fixed and seven years indeterminate for trafficking methamphetamine. Pursuant to the plea agreement, the court dismissed the harboring a fugitive charge.

## B. Procedural History

Stark petitioned for post-conviction relief, claiming his trial counsel had been ineffective for not moving to suppress the evidence found from the allegedly unconstitutional search of the backpack. The district court appointed Stark a public defender, who filed an amended petition for post-conviction relief. The district court held an evidentiary hearing. Stark submitted into evidence

the footage from the officer's body camera, which detailed his interaction with the police. The court also heard from Detective Nay, one of the responding officers, and reviewed affidavits, briefing, and arguments from counsel. Ultimately, the district court denied Stark's petition for post-conviction relief, concluding the totality of the evidence Stark presented did not raise a genuine dispute of material fact that, had Stark's attorney moved to suppress, the motion would have been granted by the trial court.

Stark appealed to the Court of Appeals, which affirmed the dismissal of his petition. Stark then petitioned for review to this Court, which was granted.

## II. STANDARDS OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Smith*, 168 Idaho 463, 483 P.3d 1006, 1014 (2021).

"When reviewing a decision denying a petition for post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous." *Savage v. State*, 170 Idaho 367, 511 P.3d 249, 253 (2022) (citing *Cosio-Nava v. State*, 161 Idaho 44, 48, 383 P.3d 1214, 1218 (2016)). The standard at an evidentiary hearing on a claim of ineffective assistance of counsel requires the petitioner to show two things by a preponderance of the evidence: (1) that counsel's performance was objectively deficient; and (2) that the deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A claim of ineffective assistance of counsel presents a mixed question of law and fact." *Savage*, 170 Idaho at __, 511 P.3d at 253 (quoting *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011)). "When faced with a mixed question of fact and law, the Court will defer to the district court's factual findings if supported by substantial evidence, but will exercise free review over the application of the relevant law to those facts." *Id*. (quoting *Booth*, 151 Idaho at 617, 262 P.3d at 260).

## III. ANALYSIS

Stark's appeal from the dismissal of his post-conviction petition is based on the claim that his trial counsel was ineffective for failing to file a motion to suppress. When a petition for post-conviction alleges ineffective assistance of counsel, this Court reviews the claim under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). to prevail on such a claim, the applicant for post-conviction relief must show (1) counsel's performance fell below an

objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. *Id.* at 687–88. Where, as here, the petitioner was convicted on a guilty plea, to satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Savage*, 170 Idaho at __, 511 P.3d at 255 (citing *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017)).

When evaluating an ineffective assistance of counsel claim, this Court does not second-guess trial counsel's strategic and tactical decisions, and such decisions cannot support post-conviction relief unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review. *Pratt v. State*, 134 Idaho 581, 584, 6 P.3d 831, 834 (2000). "There is a strong presumption that counsel's performance falls within the wide range of professional assistance." *State v. Hairston*, 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999) (quotations omitted). In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in determining whether the attorney's inactivity constituted ineffective assistance. *Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008). When the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, generally resolves both prongs of the *Strickland* test. *Lint*, 145 Idaho at 477-78, 180 P.3d at 516-17.

## A. Stark did not show his attorney's performance fell below an objective standard of reasonableness.

Stark challenges the district court's decision on three grounds: (1) the backpack was not lawfully searched incident to his arrest; (2) the contents of the backpack would not have been inevitably discovered; and (3) his disclaimer of ownership was legally ineffective. The purpose of considering whether Stark's disclaimer of the backpack was legally ineffective is to determine whether Stark has standing to challenge the search. Without standing, this Court need not consider the remaining grounds Stark alleges. Thus, we examine standing first.

"Standing in the Fourth Amendment context is used as shorthand for the question of whether the defendant personally has a reasonable expectation of privacy in the place [or thing] to be searched. *State v. Maxim*, 165 Idaho 901, 906, 454 P.3d 543, 548 (2019) (citing *State v. Mann*, 162 Idaho 36, 39 n.1, 394 P.3d 79, 82 n.1 (2017)). *See State v. Rebo*, 168 Idaho 234, 238, 482 P.3d 569, 573 (2020) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)) (explaining "the Fourth

Amendment protects people, not places" and to have a protectable interest, the defendant must have an ownership interest in the property). "One who voluntarily abandons property prior to [a] search cannot be said to possess the requisite privacy interest" under the Fourth Amendment. *State v. Ross*, 160 Idaho 757, 759, 378 P.3d 1056, 1058 (Ct. App. 2016) (citations omitted). "Abandonment, in the Fourth Amendment context, occurs through words, acts, and other objective facts indicating that the defendant voluntarily discarded, left behind, or otherwise relinquished his or her interest in his or her property." *Id.* at 759–760, 378 P.3d at 1058–1059 (citing *State v. Harwood*, 133 Idaho 50, 52, 981 P.2d 1160, 1162 (Ct. App. 1999)). "If the abandonment is caused by illegal police conduct, however, the abandonment is not voluntary." *Id.* at 760, 378 P.3d at 1059 (citation omitted).

Below, the district court found:

By verbally indicating that the bag which was searched was not his, and that he did not know what was in it, Stark did not demonstrate a reasonable expectation of privacy in the bag. Since Stark verbally demonstrated that he had no subjective expectation of privacy in that backpack and further disclaimed any privacy interest in the bag, he lost any standing he might have had to challenge the constitutionality of the search of the bag. Therefore, any suppression motion he may have filed would have ultimately been dismissed.

Stark maintains the district court's conclusion that he disclaimed his interest in the backpack was error because a suspect cannot validly disclaim an interest in an item after he is arrested but before he has received a *Miranda*[1] warning. Stark makes two subsidiary, if not contradictory, arguments addressing this point, with no citation to authority for either point. First, Stark contends that there are no facts to suggest he voluntarily discarded or otherwise relinquished his interest in the backpack. Second, Stark maintains that the statement he made to Detective Nay (disclaiming his interest) was legally insignificant because it was given while he was subject to a custodial interrogation.

We note first that substantial evidence in the record supports the district court's finding that Stark voluntarily disclaimed any interest in the backpack. Stark contested none of these findings below.

At the evidentiary hearing on the motion to suppress, Detective Nay testified on behalf of the State:

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[THE STATE]: At that point in time, did you actually try to search his backpack?

[DETECTIVE NAY]: I don't think it was that -- that initial moment. I think I searched his person first so I could be -- safely put him in the back of my patrol vehicle or sit him down, and then went and searched his backpack.

[THE STATE]: Did he tell you anything about the backpack at that point in time?

[DETECTIVE NAY]: Yeah, he said something to the effect that it wasn't his backpack.

[THE STATE]: Did he tell you that he knew what the contents were?

[DETECTIVE NAY]: No, he did not.

[THE STATE]: In fact, did he state, "I don't know what the contents are"?

[DETECTIVE NAY]: Correct. He -- he said something about, "I don't -- I don't even know what's in there."

Stark's attorney did not challenge this testimony on cross-examination. The only question Stark's attorney asked on cross-examination was: "Is your body-worn camera recording a true and accurate representation of the events as they occurred?"

The bodycam video of Stark's arrest corroborates the testimony from Detective Nay. One of the arresting officers removed a pair of brass knuckles from Stark's pocket and the same officer told Stark that he would put the brass knuckles in the backpack. Stark made an inaudible statement, and the officer responded, "the bag is *not* yours?" Additionally, in filings Stark made in the proceedings below, he conceded, "[a]lthough it is not clearly audible on the body worn camera recording of the incident, Mr. Stark apparently tells the officers that the backpack is not his, and no consent to search the backpack appears to have been given by him."

This Court has held that relinquishing ownership constitutes abandonment. *See State v. Zaitseva*, 135 Idaho 11, 13, 13 P.3d 338, 340 (2000) ("by denying ownership of the bag in response to the officer's inquiry prior to the search, [the defendant] essentially relinquished or abandoned any privacy interest in the contents of the bag."). The Court of Appeals has also held the same in several cases. *See, e.g.*, *State v. Porter*, 170 Idaho 391, 511 P.3d 273, 280 (Ct. App. 2022) (explaining "disclaimer of ownership or possession constitutes abandonment"); *State v. Melling*, 160 Idaho 209, 212, 370 P.3d 412, 415 (Ct. App. 2016) *State v. Snapp*, 163 Idaho 460, 463, 414 P.3d 1199, 1202 (Ct. App. 2018). Thus, we conclude that the record supports the district court's conclusion that Stark disclaimed his interest in the backpack.

Turning to Stark's argument on custodial interrogations, in *Miranda*, the United States Supreme Court stated that "[b]y custodial interrogation, we mean questioning *initiated* by law

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (emphasis added). In *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), the Supreme Court further defined interrogation to explain that an interrogation under *Miranda* refers to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

Stark cites no caselaw to support his claim that a suspect's disclaimer of ownership is legally ineffective if stated after an arrest but before he has received *Miranda* warnings. Instead, he relies on *State v. Melling* to *try to* distinguish the facts of his case. But *Melling* is plainly distinguishable from the facts here.

In *Melling*, an officer responded to a fight outside of a residence. 160 Idaho at 210, 370 P.3d at 413. The officer separated those involved in the fight and was speaking to Melling outside the house when Melling's girlfriend opened the front door of the residence and threw a lockbox into the grass, claiming it was Melling's. *Id.* Melling said he had never seen the box before and became nervous. *Id.* The officer went to speak with Melling's girlfriend, who claimed the box belonged to Melling and alleged it contained drug paraphernalia and a vaping device. *Id.* The officer returned to speak with Melling, who continued to deny ownership. *Id.* The officer opened the box and discovered a black scale, a pipe with white crystal substance, matches, and two fake identification cards. *Id.* at 210–11, 370 P.3d at 413–14. Melling again denied ownership and was arrested based on the statements from his girlfriend that he owned the box. *Id.* at 211, 370 P.3d at 414.

The district court, relying on *State v. Isom*, 196 Mont. 330, 641 P.2d 417 (1982), concluded that Melling did not abandon the lockbox because he did not disclaim ownership to help avoid incrimination. *Id.* at 211, 370 P.3d at 414. The Court of Appeals rejected the district court's conclusion, and held that Melling's words, actions, and the objective facts show Melling voluntarily intended to abandon his privacy interest in the box. *Id.* at 215, 370 P.3d at 215. While the Court of Appeals recognized that *Isom* did not apply because it involved a custodial interrogation, the Court of Appeals also acknowledged that no Idaho court has recognized a "trying to avoid incrimination" exception to the abandonment rule, and "[t]here is no such thing as a right against consensual self-incrimination. There is only a right against compelled self-incrimination."

7

*Id.* at 213, 370 P.3d at 416 (citing *State v. Harwood*, 133 Idaho 50, 54, 981 P.2d 1160, 1164 (Ct. App. 1999) (Schwartzman, J., concurring)).

Stark attempts to distinguish *Melling* because Melling was not yet under arrest when he disclaimed ownership, but Stark was under arrest. Arrest is not the triggering factor for a *Miranda* warning—a custodial interrogation is. The Fifth Amendment guarantees that "[n]o person shall be ... compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. To be "compelled to be a witness," one must be both in custody and subject to custodial interrogation. *See Miranda*, 384 U.S. at 467—68, 479 ("the prosecution may not use statements, whether exculpatory or inculpatory, *stemming from custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.") (Emphasis added). *See also State v. Kent,* 167 Idaho 689, 694, 475 P.3d 1211, 1216 (2020) ("[T]he specific restrictions regarding questioning a suspect created by *Miranda* are limited to custodial interrogations."). Thus, the legal principle applicable in *Melling* is just as applicable here, irrespective of whether Melling was formally under arrest at the time of his disclaimer, because both Melling and Stark *voluntarily* disclaimed their interest in the property without being subject to *custodial interrogation*.

This Court has never required *Miranda* rights be given before considering property to be abandoned. Nor does the U.S. Supreme Court recognize that a defendant has a privacy interest in abandoned property. *See Abel v. United States*, 362 U.S. 217, 241 (1960). Stark identifies no authority suggesting that the search of his backpack was anything other than an action "normally attendant to arrest and custody[.]" *Rhode Island*, 446 U.S. at 301. Stark also does not argue his statement disclaiming ownership was in response to questions initiated by law enforcement. As a result, Stark did not have standing to contest the search. Without standing to contest the search, we hold that Stark has not shown he would have succeeded on a motion to suppress.

**B.      Stark failed to show that, but for his attorney's decision not to file the motion to suppress, he would not have pleaded guilty.**

Stark was convicted following a guilty plea. This changes the standard Stark had to meet to establish prejudice in seeking post-conviction relief. To prove that counsel's deficient performance prejudiced the defendant, "[t]he *defendant* must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (emphasis added). "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Dunlap V*, 155 Idaho at 383, 313 P.3d at 39 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). "This 'requires a substantial, not just conceivable, likelihood of a different result.'" *Id*. (quoting *Cullen*, 563 U.S. at 189). This Court held in *Icanovic v. State*:

> To establish prejudice resulting from his or her attorney's performance, a defendant must show "that as a result of counsel's deficient performance 'there is a reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial.'" *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed.2d 203, 210 (1985)). Such a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485, 176 L. Ed.2d at 297–98.

159 Idaho 524, 529–30, 363 P.3d 365, 370–71 (2015).

On appeal, Stark maintains that the district court expressly recognized that Stark "would not have [pleaded] guilty to trafficking in methamphetamine and would have taken the matter to trial" had the motion to suppress been filed and granted. Stark concludes from this that he "established prejudice within the meaning of *Strickland*." The State claims this was an erroneous factual finding from the district court because Stark never made this claim below. The State asserts that neither of Stark's petitions for post-conviction relief put forth any argument or evidence that he would have insisted on going to trial.

In Stark's reply brief before this Court, he claims that the State cannot allege that he did not show prejudice below because the State did not make this argument to the district court. But this misconstrues the standard. As addressed above, the burden to show prejudice under *Strickland* in post-conviction is on Stark, not the State; thus, the State was not required to independently raise the issue below. Indeed, prejudice was not raised before the district court and nothing in the record suggests Stark argued prejudice below. Instead, Stark's argument on appeal hinges on language in the district court's decision:

> Stark argues that had his attorney filed a suppression motion, there is a reasonable probability that the motion would have been granted, the evidence found in the backpack would have been suppressed and would have thus been inadmissible against him. Had those things taken place, Stark claims he would not have pled guilty to trafficking in methamphetamine and would have taken the matter to trial.

Stark maintains that this statement reflects the district court's "understanding of the nature of a post-conviction claim of ineffective assistance of counsel based on the failure to file a motion

to suppress." Even so, as the State suggests, the district court's conclusion that Stark claimed he would not have pleaded guilty had a suppression motion been filed is not supported by substantial evidence. "A factual finding is clearly erroneous only if it is not supported by 'substantial and competent evidence in the record.'" *Dunlap v. State*, 170 Idaho 716, 516 P.3d 987, 995 (2022) (quoting *Stuart v. State*, 127 Idaho 806, 813, 907 P.2d 783, 790 (1995)). This conclusion by the district court was neither made nor proven below; nowhere in the record before the district court did Stark make an argument related to prejudice.

Even if we consider Stark's proposition that the district court's statement recognized there was prejudice, his bare argument in that regard is not enough. This Court has held that a mere assertion that "if post-conviction relief were granted, [the petitioner] would not again plead guilty but would insist on going to trial because he is innocent," is insufficient to withstand dismissal of a post-conviction claim. *Ridgley v. State*, 148 Idaho 671, 677, 227 P.3d 925, 931 (2010). In *Ridgley*, the petitioner did not connect the alleged deficiencies in his attorney's performance and his decision to plead guilty. *Id.* This Court explained that the petitioner failed to identify evidence from potential witnesses or show that information provided in police reports would have given him a reason to go to trial, nor did the petitioner put forth any potential defense that would have resulted in a different outcome. *Id.* Stark's claim fails for the same reason.

Stark filed a petition and amended petition for post-conviction relief. The amended petition superseded his initial petition. *See W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 739, 653 P.2d 791, 794 (1982) ("The amendment of the complaint supersedes the original complaint and all subsequent proceedings are based upon the amended complaint."). But in neither petition did Stark allege prejudice. In response to the question asking Stark to state the grounds for post-conviction relief, Stark alleged, "[i]neffective assistance of counsel from [trial counsel] in regards to Motion to Suppress search of backpack by challenging the search incident to arrest of the backpack." (No punctuation in original). Stating what his attorney failed to do, Stark wrote, "[trial counsel] failed to inform me that we could file a motion to suppress or that was even an option in regards to the search of the backpack." Stark put forward no other information and submitted no affidavits or evidence in support of his petition.

Stark's amended petition also failed to allege a causal connection between the alleged deficiencies of his attorney's performance and his decision to plead guilty. *See Hill v. Lockhart*,

474 U.S. 52, 60 (1985) ("Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty.").

In exchange for Stark's guilty plea to the felony charge of trafficking methamphetamine, his second felony charge, harboring a fugitive, was dismissed. We do not have the benefit of examining the plea agreement because it is not in the record, but we do know that harboring a fugitive does not carry a mandatory minimum sentence—trafficking methamphetamine does. *See State v. Puetz*, 129 Idaho 842, 844, 934 P.2d 15, 17 (1997) (discussing Idaho Code section 37-2732B, which authorizes mandatory minimum sentences for trafficking offenses).

During oral arguments, Stark's counsel argued the disparity in sentences establishes prejudice: if Stark had succeeded in the motion to suppress, the trafficking charge could have been dismissed, and Stark would have faced a less severe penalty for the harboring charge. Even so, the corollary to that is also true: if the motion to suppress were filed and failed, the State may have been disinclined to make any plea agreement offers, and Stark could have faced a potentially even longer prison sentence.

Stark faces a heavier burden under *Strickland* to establish prejudice because of his guilty plea. He has not met that burden. This Court is not "convince[d]…that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. For these reasons, Stark failed to state or prove his claim, now asserted on appeal, that he would not have pleaded guilty, but for counsel's error. Thus, Stark has shown no prejudice from his attorney's decision not to pursue a motion to suppress.

## V. CONCLUSION

For all these reasons, we affirm the district court's decision dismissing Stark's petition for post-conviction relief.

Justices BRODY, STEGNER, MOELLER and ZAHN, CONCUR.