**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51671**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Opinion Filed: October 2, 2025** |
| Plaintiff-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| RONALD J. MYERS, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for respondent.

---

HUSKEY, Judge

The State of Idaho appeals from the district court's order granting Ronald J. Myers' motion to suppress. For the reasons set forth below, we reverse the district court's order and remand the case.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Sousa stopped a vehicle for a traffic violation; in the vehicle was the driver, Myers, and two passengers. As Officer Sousa approached the vehicle, he called for a drug dog. Officer Sousa asked for, and received, identification from Myers and information regarding the vehicle, as well as the names of the two passengers. Officer Sousa returned to his patrol vehicle to run a records' check and issue citations. As Officer Sousa was conducting the records' check, Deputy Cox arrived with his drug dog, Zero. Deputy Cox had Zero conduct a free-air sniff around Myers' vehicle. Zero began the free-air sniff on the rear driver's side of the vehicle and moved

1

along the driver's door. The driver's and passenger's windows were open. Zero sniffed the driver's door, went around the front of the vehicle, and returned to the driver's side. Zero sniffed the driver's door again and Deputy Cox dropped Zero's leash. Zero then sniffed the passenger door and gave his final alert. Based on the final alert, Officer Sousa searched the vehicle and found methamphetamine and a pipe.

Myers was charged with felony possession of a controlled substance, Idaho Code § 37-2732(c), concealment of evidence, I.C. § 18-2603, and possession of drug paraphernalia, I.C. § 37-2734A. The State also alleged that Myers is a persistent violator pursuant to I.C. § 19-2514. Myers filed a motion to suppress the evidence obtained as a result of the search and a memorandum in support, arguing Zero trespassed against the vehicle in violation of the Fourth Amendment to the United States Constitution when Zero's nose twice touched Myers' vehicle as Zero walked around the vehicle. The State filed a memorandum in opposition, arguing: (1) Zero did not touch the vehicle; (2) even if Zero touched the vehicle, it did not constitute a trespass; and (3) even if Zero trespassed when he touched Myers' vehicle, Zero exhibited general alert behavior prior to touching the vehicle that gave rise to probable cause to search the vehicle. The district court held a hearing; both officers testified, and the video footage from Deputy Cox's on-body camera and Officer Sousa's dashboard camera were admitted into evidence.

During the hearing, Deputy Cox testified that when Zero is "in odor," meaning he detects an odor but does not know the location, he exhibits changes of behavior, including a head snap; bracketing, or moving the head back and forth to locate the strongest source of the odor; ears movement; visual excitement; casting, or moving the nose upward toward the odor; and changes in breathing, which include closing of the mouth and/or flaring of the nostrils. Deputy Cox stated these behaviors indicate Zero has identified a plume or cone of odor and will then "work the source" to find the odor's location. Deputy Cox further testified that he noticed pre-alert behavior when Zero smelled the driver's door the first time. Deputy Cox testified this behavior indicated to him that Zero had picked up an odor, even though Zero went to the front of the vehicle, rather than continuing to smell the door. Deputy Cox testified that he led Zero back to the driver's side of the vehicle because he believed Zero had detected an odor at the driver's door. He stated that as Zero moved towards the driver's door the second time, Zero began small bracketing, with his mouth closed. Deputy Cox testified Zero did not touch or enter Myers' vehicle.

2

Following the hearing, the district court rewatched the videos on a larger screen so that the court could slow the videos down and zoom in on the instances when Zero's nose was close to the vehicle. First, the district court found:

> Here, after the first sniff of the driver's side door, Zero went to the front of the car. After being led back to the driver's door, Zero sniffed the driver's door again. After the second sniff, Deputy Cox dropped the leash. The Court finds there is insufficient evidence that Zero's pre-alert behavior before Zero's second sniff of the driver's door objectively supports a finding of probable cause to justify the warrantless search of [Myers'] car.

Next, the district court found that because there was insufficient evidence to find Zero's pre-alert behavior gave rise to probable cause, the district court then determined whether Zero's second sniff constituted "intermeddling" with Myers' vehicle or a trespass against the vehicle in order to obtain information. The district court concluded that Zero's first sniff of the driver's door did not touch the vehicle. However, the district court reached the opposite conclusion on Zero's second sniff of the driver's door handle.

On the second sniff, the district court conducted a frame-by-frame review of the video footage. Of the eight frames reviewed, the district court found that in two frames--the fifth and sixth--Zero's nose touched the vehicle. The district court then concluded:

> Based on the video footage, the Court finds there is substantial evidence that Zero's nose contacted Defendant's car prior to Zero's final alert, and therefore was a trespass. As the contact was done by Zero's nose, which no doubt is used to obtain information--meaning Zero put his nose on the car in order to detect the odor of narcotics--and, in light of the Idaho Supreme Court's holding in *Dorff*,[1] the Court is constrained to conclude that the touching was an intermeddling, constituting a search. In other words, touching his nose to the car gave Zero enough information to give his final alert, which provided probable cause to search the car.

The district court noted that there were six frames per second in the video it reviewed and then further recognized that:

> This is a close call and because it happened so fast, it is understandable that Deputy Cox did not believe Zero touched the car. The Court also acknowledges there is a glimmer of doubt that there might be a hair's distance between the car and Zero's nose, and if this case were before the Court when it first took the bench, the outcome may be different. But it is the State's burden to show an exception to the warrant requirement exists and the Idaho Supreme Court has been resolute that any intermeddling, however slight, is a search.

(Footnote omitted.) The State appeals.

---

[1] *State v. Dorff*, 171 Idaho 818, 526 P.3d 988 (2023).

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

In his motion to suppress, Myers asserted Zero trespassed against his vehicle when Zero touched the vehicle's door handle with his nose on the second sniff. According to Myers, this specific conduct converted a permissible free-air sniff into an impermissible search as defined in *State v. Dorff*, 171 Idaho 818, 526 P.3d 988 (2023). As a result, Myers argued his Fourth Amendment right was violated because Zero's sniff was a search that was not authorized by either a warrant or an exception to the warrant requirement. The State disagreed. The State argued that Zero's nose did not touch the vehicle. Alternatively, the State argued that even if Zero had some physical contact with the vehicle, the contact was not a trespass because it did not constitute intermeddling as defined in *Dorff*. Finally, the State argued Zero's alert prior to any physical contact with the vehicle provided probable cause for the search.

### A.     Trespass

The district court first addressed whether Zero made physical contact with the vehicle and found that he did, but only after viewing the video footage frame-by-frame and freeze framing the video. The district court noted there were six frames per second and in two of the frames, Zero's nose appears to be touching the vehicle. Thus, for one-third of a second, Zero's nose touched the vehicle prior to the final alert. The district court noted that it had a "glimmer of a doubt" about whether there was a "hair's distance" between Zero's nose and the vehicle but nonetheless concluded that pursuant to *Dorff*, it was constrained to conclude that this fleeting contact violated the Fourth Amendment.

4

On appeal, the State concedes that Zero's nose touched the driver's door of Myers' vehicle but argues the district court erred in finding a search occurred because the contact by Zero's nose was for one-third of a second as Zero's head was moving past the vehicle; the contact was discernable only upon a frame-by-fame replay of the dashboard camera video; the district court did not find intentionality (by either the dog or the handler); and the contact, as found by the district court, was not heightened, did not interfere with any right to possess or exclude, and was not persistent, and thus, did not constitute the kind of contact prohibited in *Dorff*. We agree.

A reliable drug dog's sniff of the exterior of a vehicle is not a search under the Fourth Amendment and does not require either a warrant or an exception to the warrant requirement. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *State v. Randall*, 169 Idaho 358, 366, 496 P.3d 844, 852 (2021). In *Caballes*, the United States Supreme Court held that drug dog sniffs are "*sui generis*," meaning they are unique in the Fourth Amendment context. *Caballes*, 543 U.S. at 409. This is because they "disclose[] only the presence or absence of narcotics," which does not implicate any privacy interests. *Id*. Official conduct that does not comprise any legitimate interest in privacy is not a search subject to the Fourth Amendment. *Id*. at 408.

Subsequently, in *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court drew a distinction between vehicle-related dog sniffs and attaching a GPS tracking device to a vehicle. The Court held that the Fourth Amendment applies where law enforcement "physically occupie[s]" a vehicle "for the purpose of obtaining information" because the Fourth Amendment protects privacy interests in property. *Id*. at 404-05. In *Jones*, the Government attached a GPS tracking device to the defendant's vehicle without a warrant. The Government argued this was not a "search" because the defendant did not have a reasonable expectation of privacy in the undercarriage of his vehicle or in the location of his vehicle as he drove on public streets. *Id*. at 407. The Court disagreed, stating that, "for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates." *Id*. at 406. Accordingly, the Court held that, while a trespass alone is not a "search," a trespass for the purpose of obtaining information is a search under the Fourth Amendment. *Id*. at 408. The Court held a search occurred because the government physically intruded upon the defendant's vehicle by attaching a GPS tracking device for the purpose of collecting information. *Id*. at 404-05.

5

The United States Supreme Court applied principles from *Jones* in *Florida v. Jardines*, 569 U.S. 1 (2013). In *Jardines*, officers led a drug dog onto the curtilage of the defendant's home without consent, a warrant, or exigent circumstances, and the dog promptly alerted to the presence of narcotics. Based on this alert, the officers obtained a warrant, searched the home, found marijuana plants, and arrested the defendant for drug trafficking. The defendant filed a motion to suppress the evidence discovered pursuant to the warrant. Relying on *Caballes*, the government argued suppression was improper because no search occurred, reasoning that an investigation by a drug dog cannot implicate any legitimate privacy interest. The Court rejected this argument, concluding that a search occurred because "the officers learned what they learned only by physically intruding on Jardines' property to gather evidence." *Jardines*, 569 U.S. at 11. Importantly, the analysis in *Jardines* was dependent on precedent establishing that the curtilage of a home, which includes the home's porch, is protected by the Fourth Amendment and, as such, an officer, including the officer's agents, could only access the property in the same manner as an invitee. *Jardines*, 569 U.S. at 7. Because "[t]here is no customary invitation" for an invitee to bring a "trained police dog to explore the area around the home in hopes of discovering incriminating evidence," the officer and the drug dog's conduct was impermissible. *Id.* at 7-9.

In *Dorff*, the Idaho Supreme Court cited *Jones* and *Jardines* in support of its holding that a drug dog's "free-air" sniff constitutes a "search" under the Fourth Amendment's property-based test if the drug dog: (1) trespasses against the vehicle; and (2) does so for the purpose of obtaining information about, or related to, the vehicle. *Dorff*, 171 Idaho at 823-24, 526 P.3d at, 993-94. The Court reasoned that a "trespass" to chattel occurs at common law when "an actor violates 'the dignitary interest in the inviolability of chattels . . . i.e., those 'interests' that comprise the 'bundle of sticks' (e.g., the right to use, possess, and exclude).'" *Id.* at 826, 526 P.3d at 996 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER & KEETON ON THE LAW OF TORTS 85, 87 (5th ed. 1984)). The Court stressed that "the physical contact with the chattel must amount to 'intermeddling' for a 'trespass' to occur." *Dorff*, 171 Idaho at 827, 526 P.3d at 997. The Court explained that "intermeddling" represents a more intrusive level of contact, describing it as "the difference between someone who brushes up against your purse while walking by"--which would be innocuous and not a search--"and someone who, without privilege or consent, rests their hand *on* your purse or puts their fingers *into* your purse"--which would constitute a search and implicate

6

the Fourth Amendment. *Id.* "[W]hether the government's conduct amounts to 'intermeddling' is an objective, but often fact-intensive inquiry." *Id*. at 828, 526 P.3d at 998.

In *Dorff*, a three-justice majority held that the drug dog "clearly trespassed" against the defendant's vehicle when the drug dog "jumped up onto the door, and planted his two front paws on the door (and then the window) as he sniffed the upper seams of the vehicle." *Id.* at 829, 526 P.3d at 999. Although the duration of time the drug dog had his paws on the vehicle was not dispositive in determining whether his conduct amounted to intermeddling, the Court held that "the seconds that [did] pass while [the drug dog] stood on, and occupied," the defendant's vehicle--without privilege or consent--were "enough to objectively constitute a wrongful trespass against, and intermeddling with," the vehicle and the defendant's right to exclude. *Id.*

The district court in this case concluded "in light of the Idaho Supreme Court's holding in *Dorff*," it was "constrained to conclude the touching was an intermeddling" because the "Idaho Supreme Court has been resolute that any intermeddling, however, slight, is a search." However, without enlarging and freeze framing the dashboard camera video, the district court could not have concluded that as Zero approached the vehicle, his reflection was visible on the vehicle's door, and that "Zero continued to sniff closer to the car, and his nose and reflection got closer and closer until eventually the two touch, as seen in fifth and sixth frames, demonstrating that Zero's nose touched [Myers'] car, much like when one's face touches its reflection in the mirror." (Footnote omitted.)

The district court's conservative reading of *Dorff* is understandable given the "murky and uncertain legal waters" surrounding dog sniff cases. *See Dorff*, 171 Idaho at 829, 526 P.3d at 999 (Moeller, J. dissenting) (stating that, "unfortunately, the majority's decision will return us to the murky and uncertain legal waters from which we just extricated ourselves"). However, we conclude that, while *Dorff* may be dispositive in cases with the same facts, the facts in this case are distinguishable and fidelity to well-established Fourth Amendment principles compels a different result than the one reached in *Dorff*.

The Fourth Amendment prohibits unreasonable searches and seizures. As the text of the amendment indicates, and as the United States Supreme Court has held, "the ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The reasonableness touchstone is precisely why there are exceptions to the Fourth Amendment's warrant requirement, and it is what informs the reasonable expectation of privacy

inquiry when assessing the scope of the amendment's protections. *See id.* (explaining that, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions"); *see also State v. Rebo*, 168 Idaho 234, 238, 482 P.3d 569, 573 (2020) (explaining that the Fourth Amendment "also protects certain expectations of privacy, as long as society is willing to recognize such expectations as reasonable"). These principles are the pillars upon which the automobile exception rests. The United States Supreme Court has described the rationale for the automobile exception as follows:

> The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation. These two requirements for application of the exception ensure that law enforcement officials are not unnecessarily hamstrung in their efforts to detect and prosecute criminal activity, and that the legitimate privacy interests of the public are protected. Applying the vehicle exception in these circumstances allows the essential purposes served by the exception to be fulfilled, while assuring that the exception will acknowledge legitimate privacy interests.

*California v. Carney*, 471 U.S. 386, 394 (1985) (footnote omitted).

The trespass principles introduced in *Jardines* and *Dorff* do not modify the rationale for the automobile exception or the reasonableness requirement that is the touchstone of the Fourth Amendment. Nor do those trespass principles change the reason such Fourth Amendment inquiries are undertaken in the first instance, i.e., to determine whether evidence should be suppressed. The Fourth Amendment's exclusionary rule is a judicially created remedy aimed at deterring police misconduct. *United States v. Leon*, 468 U.S. 897, 906 (1984). Idaho has an independent exclusionary rule pursuant to Article I, Section 17 of the Idaho Constitution, which serves multiple purposes, including deterring law enforcement from acting unreasonably in obtaining evidence. *State v. Plata*, 171 Idaho 833, 842, 526 P.3d 1003, 1012 (2022); *State v. Guzman*, 122 Idaho 981, 989, 842 P.2d 660, 668 (1992). The other purposes include: (1) "provid[ing] an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure"; (2) "encourag[ing] thoroughness in the warrant issuing process"; (3) "avoid[ing] having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means"; and (4) "preserv[ing] judicial integrity." *Plata*, 171 Idaho at 842, 526 P.3d at 1012; *see also Guzman*, 122 Idaho at 993, 842 P.2d at 672. Outside the warrant process, the underlying point of the exclusionary rule for both the Fourth Amendment and Article I, Section 17 is effectively the same--deterring police misconduct and providing a remedy for unreasonable searches or seizures.

8

Zero's conduct in this case did not constitute a search, was not unreasonable, and did not warrant suppression of the evidence. A Fourth Amendment "search" did not occur because, unlike in *Dorff*, the drug dog in this case did not physically occupy Myers' vehicle.[2] Instead, the evidence in the record shows that Zero touched his nose on the driver's door handle of Myers' vehicle for one-third of one second while conducting a sniff. Accordingly, Zero's physical contact with Myers' vehicle was the kind of "contact to the exterior surface of a chattel" that occurs during "every-day type commotions," which, as the Idaho Supreme Court has recognized, is "insufficient" to constitute intermeddling and does not implicate the Fourth Amendment. *See Dorff*, 171 Idaho at 827, 526 P.3d at 997.

The district court's contrary conclusion was based on the purse analogy in *Dorff*. However, the purse analogy is not helpful as it relates to a dog. "[S]omeone who, without privilege or consent, rests their hand *on* your purse or puts their *fingers* into your purse" in a manner that is not incidental or consistent with "every-day type commotions" is only a trespass if done with the intent to obtain information. *See Jones*, 565 U.S. at 408 n.5 (noting a "[t]respass alone does not qualify" as a search, "but there must be conjoined with that what was present here: an attempt to find something or to obtain information"). The intent requirement makes sense, particularly in deciding whether the conduct was unreasonable such that it should result in some remedy owed to the purse-owner. For example, if the intent was to keep the owner's purse from falling off a table or picking up the purse and handing it to someone who left it in a booth at a restaurant, the conduct would be reasonable, not punishable. The difference between a human actor and a dog is that the former can be called to testify and answer questions about intent and the latter cannot; hence, it is necessary to make distinctions between the two when conducting a Fourth Amendment analysis. *See State v. Bauler*, 8 N.W.3d 892, 906 (Iowa 2024) (noting "a dog is not the same as a human" and, as such, "applying common law concepts derived from human interactions in an anthropomorphic manner to dog sniffs makes no sense"); *cf. State v. Christensen*, 166 Idaho 373, 377, 458 P.3d 951, 955 (2020) (recognizing a "dilemma arises in attempting to apply to children

---

[2]    The drug dog's brief contact with the vehicle in this case also distinguishes this case from *State v. Randall*, 169 Idaho 358, 368, 496 P.3d 844, 854 (2021) (holding drug dog's interior sniff of vehicle was a search), and *State v. Howard*, 169 Idaho 379, 382-83, 496 P.3d 865, 868-69 (2021) (holding that "when a law enforcement drug detection dog intrudes, to any degree, into the interior space of a car during a drug sniff, without express or implied consent to do so, a search has occurred under the Fourth Amendment").

evidentiary rules which were drafted with adults in mind" and to remediate the dilemma, courts should consider the totality of circumstances surrounding statements made by young children to determine whether the statements satisfy the medical diagnosis or treatment hearsay exception). Since the touchstone of the Fourth Amendment is reasonableness, reasonableness should guide our jurisprudence on what is and is not a proper dog sniff.

With respect to reasonableness, we note that, although the United States Supreme Court in *Jones* held that placing a GPS tracker on a vehicle constituted a search for purposes of the Fourth Amendment, the Court explicitly did not address whether the search was reasonable. *See Jones*, 565 U.S. at 413 (declining to address government's alternative argument that the search was reasonable because that issue was not preserved). However, the Supreme Court did address reasonableness in *Jardines*, explaining that, in light of the privacy interest in a home--"the first among equals" under the Fourth Amendment--law enforcement, accompanied by a drug detection dog, unreasonably intruded on the defendant's property by exceeding the "leave" authorized to an invitee. *See generally Jardines*, 569 U.S. 1. Zero's contact with the vehicle's door is far removed from the concerns at issue in *Jones* and *Jardines*. Indeed, Zero was doing precisely what the United States Supreme Court and Idaho appellate courts have long-held is constitutionally permissible--he conducted a free-air sniff for the purpose of detecting the presence of narcotics in an "effect" (a vehicle) that is constitutionally less protected than a home. The State argues the district court erred in inferring that Zero gathered information by contacting the driver's door handle. We agree. Zero had already detected the odor of narcotics, had already tracked the odor to Myers' vehicle, and was only trying to get as close as possible to the source already identified. Thus, the fleeting touch was not conducted to acquire additional evidence that narcotics were in the vehicle because Zero had already detected the odor and had already tracked it to the vehicle. That Zero made brief contact with the vehicle's door in the process does not render the conduct unreasonable. In fact, the brief contact is consistent with Zero's training--to track the scent as close as possible to its source. It is hardly surprising that Zero would bump the door of a vehicle as part of this process. And there is no evidence that anything about that brief contact actually resulted in any information, much less information that could make or break the probable cause determination. That the contact occurred as part of Zero's process of tracking an odor to its source, does not mean the contact was not incidental.

Because there was not a search, and because Zero's conduct was reasonable, there is no misconduct to deter, and no remedy is required unless the search was conducted without probable cause. For the reasons explained below, we conclude the search of Myers' vehicle pursuant to the automobile exception was supported by probable cause.

**B.    Probable Cause**

The State argued probable cause existed to search Myers' vehicle regardless of whether Zero had physical contact with the driver's door. Myers conceded that Zero's final alert provided probable cause but argued Zero intermeddled prior to his final alert. The district court rejected the State's arguments. The district court reviewed Deputy Cox's testimony and on-body camera footage and determined the State had not established that Zero's pre-alert behavior supported a finding of probable cause to search the vehicle, the intermeddling was for the purpose of obtaining information, and thus, the final alert constituted a violation of the Fourth Amendment.

On appeal, the State contends the district court erred in concluding the search of Myers' vehicle was unsupported by probable cause because any physical touching was not for the purpose of obtaining information. We agree.

Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person is guilty of a crime. *State v. Williams*, 162 Idaho 56, 66, 394 P.3d 99, 109 (Ct. App. 2016). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Williams*, 162 Idaho at 66, 394 P.3d at 109. When reviewing an officer's actions, the trial court must judge the facts against an objective standard. *Williams*, 162 Idaho at 66, 394 P.3d at 109. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.*

Myers did not challenge the reliability of Zero, nor did he present any evidence that Zero's alert behavior was illegitimate. There is also no dispute that the automobile exception to the warrant requirement would justify a search if there was probable cause to believe Myers' vehicle contained controlled substances. In our view, the fact that Zero's nose touched the driver's door is of no moment because, for the reasons already explained, the touching was not a search. Thus, even if the nose-touching contributed any information, that information would be appropriate to

11

consider. That said, there is no evidence that the nose-touching provided information, other than that was as close as the dog could get to the source of the odor detected. This does not, however, mean the nose-touching was *necessary* to the probable cause determination. Moreover, even if there was evidence that the dog gained some additional information as a result of the nose-touching that was relevant to the totality of information contributing to probable cause, and even if that touching was improper, Fourth Amendment principles would simply require exclusion of the unlawfully obtained information from the probable cause calculation. *See State v. Bunting*, 142 Idaho 908, 914, 136 P.3d 379, 385 (Ct. App. 2006) (explaining principle that, "when tainted evidence has been relied upon for the issuance of a warrant," an appellate court "must determine whether the remaining information presented to the magistrate, after the tainted evidence is excluded, contains adequate facts from which the magistrate could have concluded that probable cause existed for issuance of the search warrant").

Myers argues the nose-touching was critical because, "There can be no doubt that, with a dog *sniff*, the entire purpose is for the dog to gather enough information *with its nose* to decide whether it detects the odor of narcotics." Myers further argues the second nose sniff "provided Zero with enough information to decide to give a final alert." We are not persuaded. There is no evidence in the record that supports a conclusion that the one-third of one second contact was the only basis for leading a person of ordinary care and prudence to believe or entertain an honest and strong presumption the narcotics were inside the vehicle. Rather, the *entirety* of Zero's behavior supported the probable cause determination vis-à-vis Myers vehicle. *See State v. Ricks*, 173 Idaho 74, 77, 539 P.3d 190, 193 (Ct. App. 2023) (holding that probable cause may be based on a reliable drug dog's general alert behavior). The logical extension of Myers' argument would mean that probable cause would exist if a drug dog stopped "a hair's distance" shy of touching a vehicle (in an effort to get closest to the source), but probable cause would be defeated if a dog touched the door with its nose, even absent evidence that the nose-touching provided any information. We decline to adopt a legal standard that depends on measuring distance by the diameter of a strand of hair or the duration of the touch by fractions of a second, that would require law enforcement officers in real time to get close enough to detect whether a brief touch occurred during the sniff or would require district courts to conduct freeze frame analytics of on-body camera footage after the fact.

12

A review of the record in this case shows there was probable cause to support the search of Myers' vehicle for narcotics. At the suppression hearing, Deputy Cox testified about his training and experience working with Zero. Specifically, Deputy Cox testified that both he and Zero were Idaho Peace Officer Standards and Training (POST) certified for patrol, which is "apprehension, tracking, and article search," and for controlled substance detection, and that Zero was certified in detecting methamphetamine, heroin, and cocaine. Deputy Cox had been working with Zero for almost three years and completed "over 500 hours of training," including 160 hours of controlled substance training, 80 hours of narcotics detection, 240 hours of patrol training, and 80 hours of tracking. Deputy Cox testified that he became familiar with Zero's behavior based on his training and experience. For example, Deputy Cox noted that Zero's ears go forward when he detects an odor. Deputy Cox watches for visual cues from Zero, such as head snaps, bracketing (the dog is in a scent cone or plume and is moving the head back and forth to detect the strongest scent), casting (moving the nose up) and changes in breathing.

Deputy Cox also testified about the significance of Zero's behavior during the sniff of Myers' vehicle. Upon receiving Deputy Cox's command to begin the search, as Zero moved along the driver's side of the vehicle, "Zero had a very distinct head snap, his nose went up--cast upwards, his ears went forward." The deputy described the head snap as, "a very distinct snap. So it comes back very hard, almost like a whiplash snap. It snaps back, nose goes up, ears go forward." This demonstrated to Deputy Cox that Zero had picked up the odor of narcotics and was "in odor." Once Zero was "in odor," he would begin tracing the odor to its source. Deputy Cox testified that after he saw these behaviors, he had Zero return to the driver's side of the vehicle and Zero started working towards the door handle. Once Zero reached the door handle, Deputy Cox observed "small bracketing. You can see his mouth is closed. You can see the nose is going." Deputy Cox dropped the leash and walked around the corner of the vehicle. Zero then went to Deputy Cox, returned to the identical location of the driver's door handle, and laid down. According to Deputy Cox, these behavioral changes exhibited by Zero were consistent with the way the dog alerts and indicated to him that Zero had gotten as close to the source of the odor as he could. Deputy Cox's testimony provided objective evidence on the reliability and significance of Zero's behavioral changes. Consistent with case law, this evidence from a trained and reliable drug dog handler was a sufficient basis for probable cause.

13

Because the evidence in the record, including Deputy Cox's on-body camera footage and testimony, established that the Zero's behavior constituted a general alert to the presence of controlled substances prior to any physical contact with the vehicle, the district court erred in finding that the officers lacked probable cause to search Myers' vehicle.

## IV.

## CONCLUSION

The district court erred in finding that a search occurred under the Fourth Amendment when the drug dog's nose touched the vehicle's door because the contact was incidental and innocuous and did not constitute a trespass. The district court also erred in concluding the officers lacked probable cause to search Myers' vehicle. Accordingly, the district court erred in granting Myers' motion to suppress. Consequently, we reverse the district court's order granting the motion to suppress and remand the case.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.